**GARWOOD IRRIGATION COMPANY et al.,**
Appellants,

v.

**LOWER COLORADO RIVER AUTHORITY,**
Appellee.

No. 11261.

Court of Civil Appeals of Texas.

Austin.

Jan. 27, 1965.

Rehearing Granted Feb. 17, 1965.

Second Motion for Rehearing Denied
March 10, 1965.

Vinson, Elkins, Weems & Searls, Victor W. Bouldin, Wm. R. Eckhardt, Houston, Clark, Thomas, Harris, Denius & Winters, Mary Joe Carroll, Austin, for appellants.

W. Sim Gideon, Mac Umstattd, Charles F. Herring, Fred B. Werkenthin, Austin, for appellee.

ARCHER, Chief Justice.

This suit, in its original form, was filed by Lower Colorado River Authority, a conservation and reclamation district of the State of Texas (hereinafter called LCRA), against Garwood Irrigation Company, a corporation organized under the irrigation laws of Texas (hereinafter called Garwood), to recover $16,906.04 for water allegedly furnished by the plaintiff to defendant during the 1961 irrigation season, together with interest and attorneys' fees. William K. Lehrer and wife, D. A. Lehrer, were joined as defendants but having assigned all their interest to Garwood the trial court held that plaintiff was not entitled to judgment against them

B. D. Anderson and 44 other farmers intervened and alleged that they own title or right of possession to lands contiguous to, or served by, Garwood's irrigation system and asserted their statutory and common law rights to be served with irrigation waters to the full extent of the rights which Garwood holds or may acquire to use the public waters of this State.

By pleadings and cross-pleadings, additional issues were raised in regard to the validity of a certain purported contract entered into in 1937 by and between LCRA and three of the five principal irrigation companies using waters from the Colorado River in Colorado, Wharton and Matagorda Counties, and as to the validity of two further purported contracts entered into

by and between LCRA and Garwood under date of 1938 which grew out of the purported 1937 contract, and also in regard to the validity and extent of certain water rights claimed by Garwood, and numerous other related issues.

The case was tried to the court without a jury and the court entered judgment on all points for the plaintiff and in the judgment made numerous findings of fact and conclusions of law. The court also granted plaintiff an injunction perpetually enjoining Garwood from diverting water from the Colorado River after the expiration of the purported 1938 contracts (which is December 31, 1964), except for the irrigation of not to exceed 8,858.79 acres of rice per annum.

LCRA pleaded there were two agreements, one dated as of October 2, 1937 (hereinafter referred to as "Main Contract") the parties to the Main Contract being LCRA, Garwood (then a private partnership), Lakeside Irrigation Company, and Gulf Coast Water Company; and a supplemental contract between LCRA and the Lehrers (assigned to Garwood) dated as of October 13, 1938, but executed by the Lehrers in October 1938 and by LCRA in January 1940 (hereinafter referred to as "Supplemental Contract"). It was alleged that the Supplemental Contract covered a 25 year period (1940–1964) and that Garwood had during the period 1939 through 1960 watered acreage for which payment was due LCRA under said contracts and that Garwood had paid LCRA for the water furnished, and that again in 1961 Garwood had watered acreage for which payment was due LCRA under said contracts but had refused to pay for the year 1961 after due demand for payment, hence the lawsuit.

LCRA pleaded that under the Main Contract the parties had agreed the water rights owned by Garwood entitled it to take Colorado River water to irrigate 6,858.79 acres in rice each year without paying LCRA, such being the "Fixed Acreage" for Gar-

wood in the Main Contract and the Main Contract provided that if Garwood irrigated more than the Fixed Acreage "it is agreed that such excess acreage is from water supplied by (LCRA) and such fact will be conclusively presumed."

The Main Contract provided that the purpose of its execution was to "perpetually fix and establish the respective water and riparian rights and rights to impound, take and divert water from the Colorado River of the respective parties."

Appellant filed a general denial and pleaded (1) the Main Contract was void as against public policy; (2) the Supplemental Contract was void because the Main Contract was void; (3) Garwood, by cross action, pleaded that it was the owner of Certified Filing 398 at the times the Main Contract and Supplemental Contract were executed and that it is now the owner of Certified Filing 602 which it acquired in 1949 after the execution of the Main Contract and Supplemental Contract, and which, Garwood alleged, created certain water rights; and Garwood alleged that although the point of diversion under Certified Filing 602 fixed in 1910 was in Wharton County, Garwood had changed such point of diversion and Garwood alleged a bona fide controversy existed as between Garwood and LCRA as to the water rights of Garwood under Certified Filing 398 and under Certified Filing 602; and Garwood asked for a declaratory judgment, with respect to which Garwood requested the Court to (1) determine Garwood's water rights under Certified Filing 398 and Certified Filing 602 both with respect to the Main Contract and Supplemental Contract; (2) declare that Garwood under Certified Filing 398 and Certified Filing 602 had unlimited rights to use unlimited amounts of water; (3) declare that LCRA was obligated to release water from storage to meet Garwood's desires; (4) declare that Garwood did not have to pay LCRA for such water even though Garwood has contracted to do so; and (5) declare and ad-judicate the rights of LCRA and Garwood as to all issues raised by the pleadings.

On trial before the court, jury having been waived, the court found, in substance:

"(1) aside from any questions pertaining to the validity of the Main Contract, the Supplemental Contract was valid and LCRA had delivered water thereunder to Garwood in 1961 and Garwood had taken and used the water and therefore LCRA was entitled to and was awarded judgment against Garwood for water furnished in 1961 in accordance with the Main Contract and Supplemental Contract in the amount of $16,906.04, plus costs, plus attorneys' fees;

"(2) the Main Contract was valid and binding;

"(3) the obligations of the Lehrers had been assigned to Garwood and Garwood was bound by the contracts;

"(4) even if the contracts were void (and the Court held they were not) Garwood and the Intervenors were estopped to question validity of the contracts;

"(5) as to C.F. 398;

"(a) the total of all rights under C.F. 398 immediately prior to and at time of execution of Main Contract in 1937, consisted of the right to use for rice irrigation purposes not to exceed 20,000 acre feet of water each year from the normal flow of the Colorado River, subject to all prior rights;

"(b) if any rights existed under C. F. 398 other than as set out in (a) immediately above, such rights have been lost by Garwood by (i) abandonment and/or (ii) prescription on part of LCRA;

"(c) all rights under C.F. 398 are covered by the Main Contract and Supplemental Contract;

"(6) as to C.F. 602 claimed by Garwood:

"(a) Garwood failed to meet the burden of proof to show that any rights existed under C.F. 602;

"(b) if any rights existed under C. F. 602 they had been abandoned and lost, and also, if any rights existed these had been lost to LCRA by prescription before the purported acqui-sition of such rights by Garwood;

"(c) if Garwood acquired any rights under C.F. 602 such rights were later acquired by LCRA by prescription before filing of this suit;

"(d) if any rights existed under C.F. 602 at time of this suit, the total of such consisted of the right to use not to exceed 5,000 acre feet of water each year for rice irrigation, such water to be taken from the normal flow of the Colorado River, and were subject to any and all prior rights;

"(e) that the point of diversion of C. F. 602 was in Wharton County and same could not be moved without an order of the Texas Water Commission and if so moved, the amount of water which can be taken at the new point of diversion cannot exceed the amount being taken at the old point, which in this case was zero amount;

"(f) no application had been filed with, and no order entered by, Texas Water Commission relative to trans-ferring the point of diversion of C.F. 602;

"(g) that any rights acquired by Garwood under C.F. 602 are covered by the provisions of the Main Contract and the Supplemental Contract;

"(7) the total rights of each and all defendants and each and all interve-nors, independent of said contracts, with respect to the waters of the Colo-rado River are set out in (5) and (6) immediately above;

"(8) Garwood's rights being limit-ed and bound by the Main and Supple-mental Contracts, then Garwood shall not use any water out of the Colorado River except as provided in said con-tracts;

"(9) except as limited by the Main and Supplemental Contracts (and if either or both are invalid, then ex-cept as limited by par. (5) and (6) immediately above) LCRA had the right to impound, conserve, use, dis-charge and otherwise dispose of all the water of the Colorado River as against the defendants and each of them;

"(10) Garwood is enjoined from us-ing any water from the Colorado River except as permitted by this judgment;"

There appears to be three prime issues as follows:

(1) Is the Main Contract valid and is the Supplemental Contract valid?

(2) Has Garwood used water from the Colorado River for which it owes LCRA?

(3) After the expiration of the term of the Supplemental Contract (December 31, 1964), what rights does Garwood have to take water from the Colorado River with respect to the LCRA?

The court found that the Contracts were valid and that Garwood was liable, and the rights of Garwood to withdraw water from the river as with respect to LCRA were agreed to and determined by the Main Contract, and defined the rights of Garwood in the event the Contracts are void.

The appeal is based on Twenty-seven Points and are to the effect that the court erred in holding that Garwood is restricted after December 31, 1964 to the use of no more water from the river than is necessary to irrigate 8,858.76 acres in any one year; in granting an injunction restraining Gar-wood from supplying water to the lands within its service area in excess of 8,858.79 acres in any one year; in enjoining Gar-

wood from irrigating more than 6,858.79 acres of land per annum from 1964 under Certified Filing 398; in sustaining the validity of the 1937 Contract; in holding that except as otherwise provided by the 1937 and 1938 Contracts, LCRA has the right to impound and dispose of waters in the Colorado River; in holding that under Certified Filing 398 Garwood's rights consisted of the right to use not to exceed 20,000 acre feet of water per annum; in holding that Garwood is restricted to the use of water to the irrigation of rice to the exclusion of other uses; in failing to hold the 1937 Contract invalid on the ground that it purports to limit use of water under Certified Filing 398; that the judgment is not clear and does not clearly inform Garwood of the acts enjoined; in holding that Garwood and intervenors are estopped to deny the validity of the 1937 and 1938 Contracts; in holding that appellants did not meet the burden of proof to show that any rights existed in Certified Filing No. 602; that there is no evidence, or the evidence is insufficient to support the court's finding that if any rights existed under Certified Filing No. 602, the total of such use was not to exceed 5,000 acre feet of water annually; in holding that the point of diversion of Certified Filing 602 cannot be removed from Wharton County without order of the Texas Water Commission, and if the point of diversion is moved, no water can be used other than that used immediately prior to the move; in failing to hold that Garwood's transfer of the point of diversion fully complied with the law; in holding that if any rights existed under Certified Filing 602, such had been abandoned before the filing of this suit; that there is no evidence or the evidence is insufficient to support the court's holding of abandonment of such rights; in holding that any rights that ever existed had been lost by prescription; in holding that any rights acquired by Garwood under Certified Filing 602 are bound by the 1937 Contract; in failing to give effect to the 1950 agreement, and finally in holding Garwood liable

and in awarding judgment for the sum sued for and attorneys' fees.

We believe that the court was justified in rendering the judgment and that such finds support in the record.

By the Contracts LCRA guaranteed Garwood that it would receive sufficient free water to irrigate 6859.79 acres during dry as well as wet years.

The Main Contract did not impair Garwood's rights with respect to use of water from the river because for 16 years previous to 1937 the average number of acres irrigated by Garwood was 6,771.68 acres.

The Supplemental Contract provided water that Garwood could not otherwise obtain and he so agreed.

■ The original Contract is not void as against public policy.

As is stated in Missouri, K. & T. Ry. Co. of Texas v. Carter, 95 Tex. 461, 68 S.W. 159:

"The most important question certified arises out of the proposition of appellees' counsel that the contract is contrary to the public policy of the state, and therefore void. In the case of Registering Co. v. Sampson, L.R. 19 Eq. 465, the court said: 'It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because, if there is one thing which more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore you have this paramount public policy to consider: That you are not lightly to interfere with this freedom of contract.' "

In the case of Big Cottonwood Tanner Ditch Co. v. Shurtliff, 49 Utah 569, 164

P. 856, in speaking of a contract defining the amount of water different users (same as appropriators) could take, the Court said:

"Hawker, as the owner of the water right, in case of dispute, could agree to any arrangement which was satisfactory to himself and to the other users on the ditch. His agreements, if acted upon by the other water users, would not only be binding upon him, but would also bind all who claim through or under him, and, in view that appellants claim under him, they are bound by his agreements. * * * "

In Guelker v. Hidalgo County Water Improvement District No. 6, San Antonio C.C.A., 1954, 269 S.W.2d 551, writ refused, n.r.e., the Donna District, a drainage district, had in 1927 sold the perpetual rights to its drainage water to one Engelman, whose rights passed to Hidalgo County Water Improvement District No. 6. Guelker and others, landowners in the area, withdrew waters from the district's drainage ditches claiming the sale to Engelman was void as against public policy. A trial court injunction against the landowners withdrawing such water was upheld, the court stating as follows at page 554:

"The Donna District having the usufruct of the water in the drains, could sell this right to Engelman unless such a sale would be against public policy. The Donna District was organized for the purpose of furnishing irrigation water to the landowners within the terrritorial boundaries of such district, and this was and is its main purpose. No doubt, at the time Donna District made the contract with Engelman no one thought that any one owning land in the Donna District would ever desire to pump water from the drainage ditches. At that time there was an ample supply of river water for all landowners in the Donna District for irrigation purposes and drainage water was regarded as inferior water. How-ever, during the great drought existing in 1952 any kind of water was considered valuable. The Donna District had many years before sold to Engelman the right to use this water perpetually. In 1927, when the contract was made, it looked like a good deal for the Donna District. It wanted to get rid of this drainage water and Engleman could use it and was willing to spend some $109,000.00 on drainage ditches in order to secure it. We are not prepared to say that it was against public policy for Donna District to sell this water to Engleman under all of the circumstances that existed at at the time the contract was entered into. The fact that circumstances have now changed does not alter the situation and make the contract void as being against public policy, in that a water district some twenty-five years ago had contracted away water which could now be used by its own landowners."

■ The act creating the LCRA states that in accordance with public right and public duty such creation is for the purpose of controlling, distributing, etc. the waters of the Colorado River for irrigation, etc., Article 8280-107, Secs. 1 and 2(a), Vernon's Ann.Civ.St., and authorizes the entering into contracts to exercise such powers, etc. Garwood as a user of water had the power to enter into a contract. The main contract had for its purpose, as testified by Mr. Lehrer, of settling water and fixing rights, and to assure Garwood of a sufficient amount of water to meet its needs. The irrigators have no rights except through Garwood, and are not appropriators, but are customers of appropriators. Willis v. Neches Canal Co., 16 S.W.2d 266, Com. App., Sec. A., approved.

■ We believe that the contracts herein are valid and binding and Garwood cannot now, after more than 20 years, be heard to question them. 22 Tex.Jur.2d 674, Estoppel, Sec. 11. Berry v. American Rio

Grande Land & Irrigation Co., Tex.Civ. App., 236 S.W. 550, no writ history. Hill County v. Bryant and Huffman, 118 Tex. 359, 16 S.W.2d 513. Guadalupe-Blanco River Authority et al. v. The City of San Antonio, 145 Tex. 611, 200 S.W.2d 989.

Since we have concluded that the contracts are valid and binding, we do not see any useful purpose in considering the questions as to the abandonment of water rights, or loss of such by prescription, or the maximum of water not to exceed 5000 acre feet used by Garwood, during the rice irrigation season.

We do not deem it essential in this case to dispose of the question of the removal of the point of diversion under Certified Filing 602 in view of the holding that the Contracts are binding.

■ We do not believe that the intervenors have a standing to challenge the validity of the judgment because intervenors are not deprived of any rights for which they have any redress.

The intervenors have a right to demand service when water is available on a non-discriminating basis, but does not give them an interest in Garwood's source of supply. Lone Star Gas Co. v. Municipal Gas Co., 117 Tex. 331, 3 S.W.2d 790, 58 A.L.R. 797.

We do not believe that appellees are entitled to attorneys' fees on the Contracts and the suit is not on a sworn account under Article 2226, V.A.C.S. Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75.

The judgment of the trial court is reversed and judgment here rendered that appellees cannot recover attorneys' fees; in all other respects the judgment is affirmed.

Reversed and Rendered in Part and in Part Affirmed.

■ We have concluded that we were in error in not allowing attorneys' fees to appellee.

The claim for attorneys' fees is based on the provisions of Article 2226, V.A.C.S., which permits the recovery of attorneys' fees in behalf of "[a]ny person having a valid claim against a person or corporation * * * for material furnished * * *."

Under the contract appellee has furnished water, that is material, to Garwood, and attorneys' fees are allowable. Texas Gas Corporation v. Hankamer, Tex.Civ.App., 326 S.W.2d 944, er. ref., n.r.e. Ferrous Products v. Gulf States Trading Co., Tex. Civ.App., 323 S.W.2d 292, affirmed, 160 Tex. 399, 332 S.W.2d 310.

Appellee's Motion for Rehearing is granted and attorneys' fees are allowed as provided in the judgment.

Motion granted.