**The CITY OF AUSTIN, Appellant,**

v.

**NORTH AUSTIN STATE BANK,
Appellee.**

**No. 13406.**

Court of Appeals of Texas,
Austin.

March 24, 1982.
Rehearing Denied April 14, 1982.

Jerry L. Harris, City Atty., Richard C. Balough, Asst. City Atty., Austin, for appellant.

David W. Hilgers, Hilgers, Watkins & Kazen, Austin, for appellee.

POWERS, Justice.

North Austin State Bank sued the City of Austin to recover excess sums which the Bank paid for electricity furnished by the City during the period December, 1972 to February, 1979. The overcharges resulted from the City's admitted error in computing the Bank's monthly utility statements based upon an official rate applicable to customers using both electricity and gas for energy. The Bank uses only electricity and was entitled to a lower rate.[1] Based upon stipulated facts, the trial court awarded the Bank judgment for the net amount of the overcharges, $20,448.07, prejudgment interest in the amount of $2,265.32, and $10,-875.00 in attorney's fees, the last sum to be reduced by $1,000.00 and $2,000.00 if the judgment is not appealed to the Supreme Court of Texas and the Court of Appeals, respectively. The trial court filed findings of fact, consistent with the stipulated facts, and conclusions of law.

The City assigns as error the failure of the trial court to hold the Bank's action barred by limitations and payment, and the court's award of attorney's fees against the City, a municipal corporation allegedly immune from judgment for such costs.

## LIMITATIONS

The trial court's conclusions of law are to the effect that a period of limitations had

---

1. The City of Austin owns, operates and maintains an electric utility department, which it is empowered to do as a home-rule city. Tex. Rev.Civ.Stat.Ann. art. 1175 § 13 (1963). The City began furnishing electric service to the Bank on December 20, 1972. The City unilaterally assigned to the Bank a rate designated "General Service Electric," which appeared on the city's monthly statements as "332—General Service Electric." This rate is applicable to customers who utilize both gas and electricity for energy and was, therefore, erroneously assigned to the Bank, which uses electricity solely. The parties agree that the City should have assigned to the Bank a lower rate designated "General Service Commercial Space Conditioning," which appeared on the City's monthly statements as "342-Gen. Serv. CSC Elec."

The City's rates are set by ordinance. The ordinance in effect on December 29, 1972, the day the Bank began receiving electric service, was ordinance 700129–D. This ordinance was amended, effective January 29, 1978, by the passage of a new rate ordinance denominated 780119–J. The new ordinance changed the titles of the two rate categories applicable to this suit. "General Service Electric" was denominated "Electric General Service, Multi-Fuel Demand," and "General Service Commercial Space Electric" became "Electric General Services, Single Fuel Demand." The change became known to the Bank in a way not specified in the record. In any event, by letter dated March 2, 1979, the City notified the Bank that its account, and therefore the applicable rate, was being changed from the improper category of "Electric General Service, Multi-Fuel Demand" to the proper category, "Electric General Service, Single Fuel Demand." The City refunded six months accumulated overcharges, based on the difference between the two rates. This suit followed.

not run at the time the Bank filed its suit.[2] A suit for money had and received is governed by the two year statute, Tex.Rev.Civ. Stat.Ann. art. 5526 (1958). *Causeway Investment Co. v. Nass*, 131 Tex. 12, 111 S.W.2d 703 (1938). We will assume this shorter period to be the applicable period of limitations. The parties join issue on the question whether the Bank, more than two years before suit was filed, had constructive notice of the City's mistaken and improper categorization.

The City contends ordinance 700129–D was in effect on the day the Bank requested electric service in 1972 and the Bank was therefore by law charged with notice of the correct classification and rate described therein. Moreover, the City alleges, had the Bank compared the applicable City utility regulations, of which the Bank had constructive notice, to the erroneous billing code shown on the Bank's monthly statements, the mistake would have been obvious. The Bank was, therefore, put on inquiry, the City argues, and if the matter had been pursued with diligence, the Bank would have discovered the City's mistake in assigning to the Bank an erroneous classification and rate. *City of Fort Worth v. Johnson*, 388 S.W.2d 400 (Tex.1964); *Johnson v. City of Dallas*, 78 S.W.2d 265 (Tex. Civ.App.—Dallas 1934, writ ref'd); *Hohertz v. Durham*, 224 S.W. 549 (Tex.Civ.App.— Austin 1920, no writ); *Isaacks v. Wright*, 50 Tex.Civ.App. 312, 110 S.W. 970 (1908, writ ref'd). The Bank replies by citing *El Paso Electric Co. v. Raynolds Holding Co.*, 128 Tex. 495, 100 S.W.2d 97 (1937), a decision to the effect that the law presumes a supplier of electricity will charge the proper legal rate, a presumption upon which the Bank

was entitled to rely until it came into actual possession of facts sufficient to put an ordinary prudent person on inquiry. Moreover, the Bank contends, there is sufficient evidence in the record to support the trial court's conclusion that no such facts are shown in the record of this case.

The ultimate burden of proving the bar of limitations was upon the City. We assume, however, that the nature of the case pleaded by the Bank and the filing date on the petition evidence a *prima facie* showing that the claim would be barred by limitations. We turn then to the exculpatory showing of due diligence required of the Bank. It is in this respect that the holding in *El Paso Electric Co. v. Raynolds Holding Co.*, 100 S.W.2d at 101–102, has the most significance for this case. The court there wrote:

> Under the statutes of this state, as well as by principles of common law, defendant was prohibited from discriminating between its customers, *situated under like circumstances*, either as to the service rendered or the charges made therefor. *Plaintiffs had a right to rely on the presumption that defendant would obey the law and would give them the benefit of the rate they were entitled to receive under the published schedule. Being in a position both as to an understanding of the true meaning of the schedule and as to the appliances or methods for ascertaining the measured demand applicable to plaintiff, defendant's obligation was to deal fairly and give plaintiffs the benefit of the most favorable rate which they were entitled to receive.* [citations omitted] We do not intend to hold that

---

**2.** The trial court made additional findings of fact as follows:

13. There is no explanation of the distinction between Rate Code 332 (General Service Electric) and Rate Code 342 (Gen. Ser. CSC Electric) contained in the Electric Utility Service Regulations attached as Exhibit "C."
14. There is no explanation of the distinction between Rate Code 332 (General Service Electric) and Rate Code 342 (Gen. Ser. CSC Electric) contained in the billing form attached as Exhibit "A."

&ast; &ast; &ast; &ast; &ast; &ast;

The trial court filed these additional conclusions of law:

&ast; &ast; &ast; &ast; &ast; &ast;

8. The City of Austin's billing codes, shown on the monthly electricity statements, are insufficient to put an ordinary prudent person on notice that the wrong rate is being applied.
9. The City of Austin's rate codes are insufficient to put an ordinary prudent person on notice that the wrong rate is being applied.

&ast; &ast; &ast; &ast; &ast; &ast;

public utility companies in every instance are under a legal obligation, prior to installation of service, to see that customers receive the most economical service and rates, but *we do hold that under the circumstances of this case plaintiffs had a right to rest upon the assumption that the bills rendered were not discriminatory, but were based upon a correct estimate of the measured demand.* Whatever may be the rule with reference to the use of diligence to discover fraud, we hold in this instance that *owing to the relation of the parties,* as above set forth, plaintiffs were under no duty to exercise diligence to discover the over-charges (even if they could have reasonably done so) *until* they came into possession of facts sufficient to cause them to distrust defendant, and also to put an ordinarily prudent person on inquiry. In our opinion, *defendant has failed to show any fact or circumstance which justifies us in holding, as a matter of law, that plaintiffs were put upon inquiry, and the finding of the jury on the question of notice is in harmony with and supported by the facts and circumstances.* (emphasis supplied). [The jury found that plaintiffs failed to actually discover, and could not by the exercise of reasonable diligence have discovered the excessive charges.]

Under this holding, a presumption (that the supplier will charge the correct rate for electric service) arose to rebut the City's *prima facie* showing of the bar of limitations, and the burden shifted back to the City to show that the Bank actually possessed facts sufficient to cause it to believe an incorrect rate had been charged, and also to put an ordinarily prudent person on inquiry.

As was the case in *El Paso Electric Co.,* we believe the City has failed to show any fact or circumstances which justifies our holding, as a matter of law, that the Bank was put upon inquiry, and the findings and conclusions of the trial court, to the opposite effect, are in harmony with and supported by the stipulated evidence.

The monthly statements do not compel a finding that the Bank was put on notice of an improper categorization and rate because they contain no information upon which a categorization may be based. These statements simply reflect the rate charged and the title of the category, usually abbreviated, to which that rate is applicable. The applicable departmental regulations do not compel the necessary finding because only one page of the regulations is attached to the parties' stipulation and it sets forth no information upon which a categorization may be made. That page only states, in pertinent part, that a prospective customer may state the class of service desired, upon which statement the City may rely.

■ The ordinance in effect at the time service was applied for by the Bank does not compel, as a matter of law, the finding that the Bank had the requisite notice because the ordinance is highly technical with respect to the character of service which qualifies a customer for the relevant category, General Service Commercial Space Electric, making it questionable whether an ordinary prudent person would understand it. More importantly, a classification under that ordinance depends upon a contingency—the City must make a decision that "not less than 50% of the total annual energy consumption is utilized by the customer during the billing months of November through April, inclusive." It may not be said, as a matter of law, that the Bank is charged with notice of the applicability of these ordinance provisions to itself when the City never made the decision prerequisite to such applicability, as shown conclusively by the action of the City in placing the Bank in an altogether different category from the very beginning of service.

The foregoing evidentiary matters are in harmony with the trial court's findings and conclusions that the Bank had not received constructive or actual notice sufficient to invoke inquiry and commence any applicable period of limitations. We overrule the City's point of error.

## PAYMENT

The City of Austin, as a home-rule city operating its own electrical utility, has the statutory authority "to fix such rules and regulations governing the city's liability as may be deemed advisable." Tex.Rev.Civ. Stat.Ann. art. 1175, § 6 (1963); see Tex. Rev.Civ.Stat.Ann. art. 1446c, § 17 (1980). The City promulgated the following regulation among others governing electrical service:

> If for any cause a service contract is entered into in which is specified a rate schedule not applicable to the class of service taken, upon discovery of the error all bills rendered during the proceeding six months will be recalculated in accordance with the proper rate schedule and any excess paid shall be refunded by the City or any balance due shall be paid by the customer.

The City made the recalculation and refund contemplated by this section and argues that the City has no liability to the Bank for any additional sum.

■ The trial court held that the regulation did not, either by express language or legal effect, limit appellee's recovery to the six-month period indicated in the regulation. We observe that the trial court, consistent with the parties' stipulation, made findings of fact to the effect that no service contract was "entered into" by the Bank and the City in the sense of an express service contract. This is the specific kind of contract contemplated by the regulation. In contrast, the parties had in this instance what amounts to an oral and implied contract which did not specify any rate schedule. The Bank was obligated under such contract to pay for the quantity of electricity supplied by the City at an official rate determined unilaterally by the City. The regulation, on its face, does not apply to these circumstances. The credit unilaterally conferred upon the Bank by the City does not, therefore, constitute a full and complete discharge of the latter's obligation to the former. We overrule the City's point of error.

## ATTORNEY'S FEES

■ The City contends the trial court erred in awarding the Bank attorney's fees under Tex.Rev.Civ.Stat.Ann. art. 2226 (Supp.1982). Traditionally, such costs are not adjudged against a municipality. Willis v. City of Lubbock, 385 S.W.2d 617 (Tex. Civ.App.—Amarillo 1964, writ ref'd n. r. e.); City of Houston v. Howe & Wise, 323 S.W.2d 134 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.); City of Houston v. L. J. Fuller, Inc., 311 S.W.2d 285 (Tex.Civ.App.— Houston 1958, no writ). The basis of these decisions, so far as we can determine, is that the word "corporation," against which attorney's fees may be adjudged under article 2226, does not, in common usage, include a municipal corporation, even when it is acting in its proprietary capacity. Unless the statute expressly provides that municipalities shall be included within the scope of the word "corporation," they may not be included therein by construction. State v. Central Power & Light Co., 139 Tex. 51, 161 S.W.2d 766 (1942). The opinion in the Central Power & Light Co. case expressly recognizes that there are exceptions to the rule just stated, but gives no indication what such exceptions are. We find some such exceptions ourselves. See, e.g., Jeffries v. Commonwealth, 121 Va. 425, 93 S.E. 701 (1917) (a constitutional provision requiring that general laws shall provide for voluntary surrender of charters by "corporations" embraces public service corporations); People v. City of Chicago, 349 Ill. 304, 182 N.E. 419 (1932) (a municipal corporation is a "corporation" within a statute authorizing quo warranto proceedings against a corporation exercising powers not conferred by law); State ex rel. Martin v. Tucker, 176 Kan. 192, 269 P.2d 447 (1954) (municipal corporations are "corporations" within a constitutional provision prohibiting passage of special acts conferring corporate powers); City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744 (1932) (a statute which taxes all "corporations" receiving payment for electricity includes a municipal corporation receiving such payment). There are other decisions wherein the word "corporation" is held to include a municipal corpora-

tion. One may, in fact, state that such decisions are not insubstantial in number and in the variety of circumstances where municipal corporations are constructively included within the word "corporation."

The inequity of the rule of *State v. Central Power & Light Co.,* *supra,* is apparent to us, but we may not circumvent the rather clear declaration in that opinion to the effect that a statute using the word "corporation" does not include municipal corporations "unless the statute *expressly* so provides." There being no express provision to that effect in article 2226, we must defer to the Supreme Court of Texas and conclude, as a matter of law, that the statute does not contemplate the award of attorney's fees against municipal corporations, notwithstanding the legislature's 1979 amendment advising a liberal interpretation of the article.

■ Appellee argues that the City agreed to pay attorney's fees and the judgment for such costs may be sustained on that basis. There are several reasons for rejecting this argument, but it is sufficient to point to the agreement itself, wherein it provides: "*[I]n the event* North Austin Bank is *entitled* to recover attorneys' fees from the City of Austin," a reasonable fee for trial on the merits would be an amount equal to one-third of any sum recovered. (emphasis supplied). This may not reasonably be interpreted to mean that the City waived any defense it had to the claim for attorney's fees, apart from the issue of reasonableness. It is only an agreement dispensing with the requirement of proof of what amount constituted a reasonable sum for attorney's fees, while reserving for adjudication the question whether the Bank was entitled under the law to such sum. The words will bear no other interpretation, particularly the extended interpretation advanced by the Bank.

We sustain the City's last point of error directed at the trial court's award of attorney's fees.

We therefore affirm the judgment of the trial court as to all sums awarded therein apart from attorney's fees; and reverse the award therein of attorney's fees in the amount of $10,875.00, rendering judgment that appellee take nothing by its claim for attorney's fees.