WICKERSHAM FORD, INC., Appellant,

v.

ORANGE COUNTY, Texas, et al, Appellees.

No. 09 84 320 CV

Court of Appeals of Texas, Beaumont.

Dec. 12, 1985.

Rehearing Denied Jan. 2, 1986.

---

John H. Hannah, Jr., Tyler, for appellant.
Louis Dugas, Jr., Orange, for appellees.

## OPINION

BROOKSHIRE, Justice.

Limited appeal to recover attorneys' fees. The district court, following the jury's verdict, awarded the Appellant damages for breach of contract of sale of automobiles, of which neither Appellant nor Appellee complains. No appeal was taken concerning these breached contract damages, but Appellant was denied attorneys' fees claimed under *TEX.REV.CIV.STAT. ANN. art. 2226* (Vernon Supp.1985). Firstly, the court held, as a matter of law, that the attorneys' fees, founded on a contract and based on the cited statute, could not be recovered against a county.

An additional count and amount for attorneys' fees were found by the jury. This separate award was founded on the jury's finding that the county's "cross-claim" under *TEX.BUS. & COM.CODE ANN. art. 17.41, et seq., Deceptive Trade Practices-Consumer Protection Act,* was filed in bad faith and for the purpose of harassing Appellant. The jury determined that the Appellant, Wickersham Ford, Inc., had not violated the Deceptive Trade Practices Act. The court rendered judgment non obstante veredicto despite the finding of harassment. The judgment n.o.v. was signed without an appropriate motion or notice to Appellant. Apparently, this action at the trial level was sua sponte.

A summary or version of this record is indicated. In mid-January, 1983, Orange County officials, through the auditor's office, sent out a "Request for Bids", including specifications for 7 vehicles for the sheriff's office. The "Request for Bids" was distributed by mail to coincide with the first publication of the same in the Orange Leader, a daily newspaper. The "Request for Bids" and the complete packet of specifications were a public record. The sheriff, or the sheriff's office, determined the specifications for the needed vehicles and delivered them to the auditor's office. This procedure was customary and was not objected to by the Commissioners Court. The chief deputy, Jim Adams, usually supplied the information and specifications and the notice to bidders (Request for Bids) to the auditor. Item 3 of the "Notice to Bidders", on page "F" of Plaintiff's Exhibit No. 1 read:

"3. If there are any questions contact Chief Deputy Adams at 883–2616."

The telephone number was that of the sheriff's department. The vehicle specifications did not require new units. Nor did the specifications set out a minimum mileage. The specifications were detailed, containing 31 separate specifications. These specifications did not mention the year model of the cars. The sheriff's vehicles had only to meet or exceed the stated specifications. The county auditor conceded that the bid proposal sent to Wickersham Ford, Inc., did not indicate that the vehicles should be new. The auditor agreed that there was no requirement in the bid proposals setting a minimum mileage on the vehicles. In fact, there was no demand or request in any of the bid proposals or specifications requiring information about mileage. Nor were there any blanks to fill in

at any place on the bids requiring that the mileage of a vehicle be disclosed.

In the past, in January of 1982, there had been a request for bids sent out for 4 or 5 4-door passenger sedans for the sheriff's department, specially designated "new". A specification for "new" equipment was not made in the instant case.

The Appellant had been selling cars to Orange County and to the sheriff's department for about 34 years. Over the 34 year period, Appellant had been awarded approximately 80% of the bids involving vehicles.

Prior to the final date for receiving the bids, Mr. Charles Wickersham, the President of the Appellant motor company, contacted Chief Deputy Jim Adams, pursuant to item 3, being an instruction to the bidders. Wickersham, through the Chief Deputy, advised the sheriff's office that there were available for immediate delivery 3 cars, one Mercury and 2 Ford LTD's. Chief Deputy Adams was fully advised that the 2 Fords had been used in a driver's education program in an independent school district in Orange County. One of the Fords had about 5,000 miles on it and the other LTD had 6,000 miles on the speedometer. The other vehicles requested by the sheriff's office would be factory ordered. Wickersham also explained that the 3 cars available for immediate delivery would meet or exceed the bid specifications. All 3 were equipped with a partial police package. The detailed specifications only required a non-police package because usually the non-police packaged vehicles could be delivered in a shorter time than vehicles with either partial or complete police packages. The 2 vehicles used in driver's education courses would be covered by a standard new car warranty. The 1982 Mercury Marquis was new and had a "handling package", which was alleged to have made it a tighter and more maneuverable car. It met or exceeded the County of Orange's specifications.

Chief Deputy Adams was interested in having the 3 cars immediately delivered. The sheriff's office needed to have them available at the earliest possible time. The quicker the sheriff's vehicles could be delivered, the better the situation would be for that branch of law enforcement. Otherwise, it would take from 90 days to 6 months to obtain a sheriff's vehicle with a complete police package after the bids were accepted and the orders placed. Adams testified that the sheriff's department needed cars and needed them badly. He said that the cars had heavy duty suspension equipment and at least partial police packages, testifying further that no one of the 3 cars fell below any of the specifications. Adams was perfectly satisfied with the 3 cars. Again, he stressed the need and desirability of immediate delivery. Adams communicated all the information concerning the equipment and specifications of the 3 vehicles to the sheriff, who also desired their immediate delivery. The sheriff instructed Adams to go to Wickersham, Inc., and personally inspect the cars in a careful manner. Chief Adams stated that, in view of the heavy duty springs and the extra equipment, the 5,000 or 6,000 miles on the cars were considered negligible. He said that 5,000 miles would be placed on a sheriff's car in about 38 days. In the past, Adams had had experience with driver's education cars. His experience had taught him that they were normally driven very slowly with hardly any wear, the bugs in them having been worked out. Adams further revealed that, on the Mercury Marquis, only one tire had to be realigned. The 3 cars were in good shape.

The auditor unsealed the bids on the last day of January, 1983, in a Commissioners Court session. Following custom, the bids were tabled for a week in order to grant the auditor's office and the sheriff's office full time to study and analyze them. During the week after January 31, 1983, the auditor's office advised the sheriff's office that Wickersham was the low bidder. Also, during this week's interim, Chief Deputy Adams made a special trip to Wickersham Ford, Inc., and inspected the 3 cars. The Chief Deputy was fully satisfied. He advised the sheriff that the department

would get a good deal by obtaining the 3 cars from Wickersham Ford, Inc.

In early February, 1983, the sheriff appeared at the Commissioners Court meeting and was asked by the county judge which bid he preferred. The sheriff replied that he wanted to accept the Wickersham Ford, Inc., bid. The Commissioners Court accepted the Wickersham bid on February 7, 1983. Later on, during the same day, when the Commissioners Court accepted and approved Wickersham's bid, both Chief Deputy Adams and Sheriff Parker called Mr. Wickersham and advised him that his Ford agency had been awarded the bid. Then, on February 8, 1983, the sheriff's deputies picked up the 3 cars. They painted one and began to equip the other two with sirens and radios. One of the Ford LTD's was turned over to the body shop for specialized painting and in the other two vehicles holes were drilled to put in radios and special lights. Holes were drilled in the rear quarter panels for antennae. Other holes were drilled through the firewall and grill for siren, speaker and radio wiring. In addition, some mileage was put on the cars. As of the trial date, the County was still in possession of the vehicles.

At some time after February 14, 1983, a representative of Harmon Chevrolet, advised then commissioner, Arthur Simpson, that 2 of the cars had mileage on them. On March 7, 1983, the Commissioners Court considered "rescinding" the acceptance of the Wickersham bid. After discussion, there were 4 votes in favor of "rescinding" the Wickersham bid or, more correctly stated, of *repudiating the acceptance* of said bid. Wickersham was permitted to address that Commissioners Court's meeting. He stated that he wanted to be fair and:

"... if you don't want these cars, and if you will put them back in whole, I will take them back. If you want to go ahead and order the seven units from the factory, we will be glad to do that, too. That's no problem. I just want everybody here happy."

Honorable Stephen C. Howard, an Assistant County and District Attorney for the County of Orange, attended the same meeting. He explained that the District Attorney's office is also the County Attorney's office. He stated that part of his responsibilities as County Attorney was to give advice to the County Commissioners Court. At the meeting on March 7, 1983, he officially advised the Commissioners Court as follows:

"A. I told the Court that I believed they had a binding contract with Mr. Wickersham and his Company."

. . . .

"Q. Did they immediately, or within a few minutes after you gave them that advice, without seeking any other advice, vote to repudiate the contract?

"A. The part of your question about seeking other advice, I don't know, but it wasn't but a few minutes later they did vote.

"Q. To repudiate the contract?

"A. That is correct.

"Q. You didn't see them seek any other advice, did you?

"A. No."

A letter to Wickersham advised him to pick up the cars; no offer was made to restore the cars to their original condition.

Having not received his vehicles, Wickersham Ford, Inc., filed suit for breach of the contract seeking damages, interest, costs and attorneys' fees. Orange County filed a cross-claim under *TEX.BUS. & COM.CODE ANN., sec. 17.45,* et seq. (Vernon Supp.1985), alleging the Appellant had failed to disclose that two of the cars bid had been used in Driver Education. Answering the cross-claim, Wickersham pleaded that the Deceptive Trade Practices Act suit was groundless and filed in bad faith or, alternatively, was brought for the purposes of harassment.

By its verdict, the jury found that Chief Deputy Jim Adams had apparent authority to determine whether the Mercury and the 2 LTD automobiles met or exceeded the specifications for same; *that Adams deter-*

*mined that the 3 vehicles from Wickersham met or exceeded the specifications of the bid that was accepted by Commissioners Court;* that Orange County repudiated its contract with Wickersham without just cause; that, prior to February 7, 1983, Wickersham Ford did not fail to disclose to Orange County that the Ford vehicles had been used in driver education programs; that Orange County brought its deceptive trade practices suit against Wickersham Ford in bad faith; and that the cross-claim of Orange County was brought for the purposes of harassment.

A crucially important stipulation as to all attorneys' fees was entered into by both parties. It recited that Wickersham's necessary and reasonable fees, on the breach of contract action, would be $22,555.00. An additional reasonable amount for defending the DTPA cross-claim was $5,560.00, with expenses of $273.00. Further, on an appeal, a reasonable fee for Wickersham, to the Court of Appeals, would be $3,000.00. The stipulation also provided that both counts for attorneys' fees would be awarded conditioned upon and consistent with the pleadings *and the findings of the jury.* At this stage of the appeal only the attorneys' fees for Wickersham Ford are in contest.

The Appellant contends that the trial court erred in denying its motion for judgment seeking attorneys' fees under *TEX. REV.CIV.STAT.ANN. art. 2226* (Vernon Supp.1985). Appellant says that Texas counties are liable for such attorneys' fees. We agree.

The learned, respected trial court reasoned that, even though Wickersham prevailed on its breach of contract suit; nevertheless, it could not recover its reasonable and necessary stipulated attorneys' fees under *art. 2226* because the county is not a corporation as that word is used in *art. 2226. TEX.REV.CIV.STAT.ANN. art. 2226* (Vernon Supp.1985) is worded:

"Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material fur-

nished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, or suits founded on oral or written contracts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees...."

The trial court construed this statute reasoning that Orange County was not a "corporation"; therefore, not liable for the attorneys' fees.

■ We think the reasoning and rationale in *Garwood Irrigation Co. v. Lower Colorado River Auth.,* 387 S.W.2d 746 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.) is persuasive and sound. LCRA, a conservation and reclamation district of the State of Texas, being an agency or subdivision of the State, sued the irrigation company for $16,906.04 for water furnished for rice farming purposes. LCRA's claim for attorneys' fees was based on the then provisions of *art. 2226* which permitted the recovery of attorneys' fees in behalf of " '[a]ny person having a valid claim against a person or corporation ... for material furnished ...' " The court, in effect, held that LCRA was a "person" within the meaning of then *art. 2226*, it being an agency or subdivision or municipality or political subdivision of the state. The rationale and logic of *Garwood Irrigation Co., supra,* is that a body politic, or agency, or municipality or political subdivision of the state should not obtain the benefits of the statute by claiming it is a "person" within *art. 2226* and, therefore, entitled, as a plaintiff, to sue for and recover a reasonable attorney's fee and then deny the same rationale, logic and reasoning as to the applicability of *art. 2226* when the body politic or subdivision of the state is sued as a defendant. We squarely, sanguinely hold that Orange County is a "person" within

the meaning of *art. 2226* and that Wickersham Ford, Inc., is entitled to recover its $22,555.00 as reasonable attorneys' fees, based on the findings of the jury, on its breach of contract action. Also, we sagaciously hold Orange County is a corporation within the meaning of *art. 2226.*

Orange County relies, in a major sense, on *City of Austin v. North Austin State Bank,* 631 S.W.2d 564 (Tex.App.—Austin 1982, no writ), to sustain its contention that attorney's fees cannot be adjudged against the county. We certainly respect that decision but decline to follow the same. In *City of Austin, supra,* in reversing the attorney's fees award, the court held that a city was not a corporation within the meaning of *art. 2226.* That case is not controlling of our case subjudice.

Furthermore, we do not think that sound reasoning supports the argument of Orange County that it should simply be exempt from liability for attorneys' fees. Under this record and under the findings of the jury and *especially under the Stipulation and Agreement as to Attorneys' Fees,* we find that Orange County should be held responsible. Here, the jury found that Orange County had sued Wickersham Ford, Inc., in bad faith and for the purposes of harassment. Orange County was in the wrong. The stipulation specifically awarded attorneys' fees consistent with the findings of the jury. We decide: " 'The government is bound by law just as the citizen.' " *State v. City Nat. Bank of Austin,* 578 S.W.2d 155, 161 (Tex.Civ.App.—Tyler 1979, affirmed 603 S.W.2d 764). In fact, the jury, in essence, found that the County of Orange committed two wrongs. It breached the contract and it brought a cross-claim against Wickersham Ford, Inc., in bad faith and for harassment. We sustain Wickersham Ford, Inc.'s first point of error and decide Appellant is entitled to $22,555.00 as attorneys' fees on the breach of contract action.

■ In its concluding point of error, Appellant contends the trial court committed error in denying the Appellant its attorney's fees for defending against Orange County's cross-claim based on the Deceptive Trade Practices Act (DTPA). Inasmuch as the district court entered a judgment which was, in effect, a judgment non obstante veredicto (when no motion for judgment n.o.v., *concerning the jury findings,* had been filed by the County), and inasmuch as no notice was given and no hearing was conducted before the denial of attorneys' fees was adjudicated by the court, we conclude that the court committed error. This, we decide, was error procedurally and because of the change in the wording of *TEX.BUS. & COM.CODE ANN. sec. 17.50(c)* (Vernon Supp.1985).[1]

Orange County filed its Second Amended Cross-Claim against Wickersham, saying its claim was brought pursuant to *TEX. BUS. & COM. CODE ANN. secs. 17.45, 17.46 and 17.50* (Vernon Supp.1985), known as the "Deceptive Trade Practices Act". Orange County alleged that it was a consumer, pursuant to *sec. 17.45(4)* of the "Consumer Protection Act", in that, as a governmental entity, it sought to acquire goods by purchase, said goods being motor vehicles. The County further alleged that the "Cross-Defendant" was engaged in "trade" and "commerce" as defined by *sec. 17.45(6),* "Consumer Protection Act". The cross-claim was based on the allegation

1. A comparison with the law, which is applicable to this case, to the previous statutory language is meaningfully significant and different. Prior to the amendments of 1979, sec. *17.50(c)* stated:

> "On a finding by the court that an action under this section was groundless and brought in bad faith or for the purpose of harassment the court may award to the defendant reasonable attorney's fees in relation to the amount of work expended and court costs." [*Schott v. Leissner, supra*]

The language of this section, controlling our case, reads:

> "On a finding by the court that an action under this section was groundless and brought in bad faith, or *brought for the purpose of harassment,* the court *shall* award to the defendant *reasonable* and *necessary* attorney's fees and court costs." (Emphasis ours) [*Sec. 17.50(c)* (Vernon Supp.1985)]

that Wickersham had failed to disclose that 2 of the automobiles were "used". Appellant, Wickersham, responded by alleging that the County's suit was groundless and brought in bad faith, or brought for the purposes of harassment.

TEX.BUS. & COM.CODE ANN. sec. 17.50(c) (Vernon Supp.1985), provides that an action brought for the purposes of harassment requires that "the court shall award to the defendant reasonable and necessary attorneys' fees and court costs". We decide that the more recent and better-reasoned cases hold that, upon a *finding of harassment by a jury*, that party is entitled to its attorneys' fees. In *Schott v. Leissner*, 659 S.W.2d 752 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), we find, at page 754:

"The plain meaning of the statute now appears to delineate two situations in which a defendant 'shall' recover attorney's fees: 1) when an action is found to be groundless and brought in bad faith; or 2) when an action is brought for the purpose of harassment. . . .

"When the legislature amends a law, it is presumed that it intends to change the law. *American Surety Co. of New York v. Axtell Co.*, 120 Tex. 166, 36 S.W.2d 715, 719 (1931); *Travenol Laboratories, Inc. v. Bandy Laboratories, Inc.*, 608 S.W.2d 308, 314 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). We give effect to the legislature's addition of the *comma* after the word 'faith' and the insertion of the word 'brought' a second time after the word 'or' in the present version of section 17.50(c), i.e., 'groundless and brought in bad faith, (comma) or *brought* (additional word) for the purpose of harassment.' Following the rule established in the cases of *Genico Distributors [v. First National Bank of Richardson*, 616 S.W.2d 418 (Tex.Civ. App.—Tyler 1981) ], *O'Shea [v. International Bus. Machines Corp.*, 578 S.W.2d 844 (Tex.Civ.App.—Houston, (1st Dist. 1979)], and [*Computer Business Services v.*] *West* [, 627 S.W.2d 759 (Tex.App.—Tyler 1981)], we acknowledge that the

question of whether a lawsuit is brought for the purpose of harassment is a fact question for the jury." (Emphasis theirs)[1]

We agree with the reasoning in *Schott, supra.*

As an additional reason and basis for awarding the $5,560.00 fee, *we emphasize the stipulation* which stated in part:

"Such attorneys' fees if any *to be awarded* conditioned upon and *consistent with . . . findings of the jury in said cause.*" (Emphasis added)

Because of this stipulation, we decide that Wickersham is entitled to its additional attorneys' fees in the amount of $5,560.00.

Hence, we decide, adjudge, and order that the judgment herein be reversed and reformed so that Appellant recover, firstly, $22,555.00 for its attorneys' fees on the breach of contract action and, in addition thereto, the sum of $5,560.00 for successfully defending the DTPA "Cross-claim", which said amounts are to draw interest at the post-judgment rate from the date of the judgment of the trial court, being the 17th day of May, 1984, until paid. In addition thereto, as stipulated, an additional $3,000.00 fee is awarded for the successful appeal to this court, with post-judgment interest after the date of this opinion until paid.

We sustain Appellant's Points of Error One, Two and Three, which are completely dispositive of this appeal. Hence, we need not act upon Appellant's Points of Error Four, Five and Six.

In accordance with this decision and opinion, we overrule Appellee's four "Reply Points".

Judgment REVERSED AND RE-FORMED and, as reformed, RENDERED in favor of Appellant.