DIESEL FUEL INJECTION SERVICE,
INC., Appellant,

v.

Austin GABOUREL, Appellee.

No. 13–93–203–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 22, 1994.

Rehearing Overruled Jan. 26, 1995.

Franklin T. Graham, Jr., Brownsville, for
appellant.

Dennis Sanchez, Sanchez, Whittington &
Janis, Brownsville, for appellee.

Before KENNEDY, GILBERTO
HINOJOSA and YAÑEZ, JJ.

### OPINION

GILBERTO HINOJOSA, Justice.

Austin Gabourel sued Diesel Fuel Injection
Service, Inc., for negligence, breach of war-
ranty, and DTPA violations in connection
with the repair of the diesel engine on Ga-
bourel's shrimp boat. The trial court grant-
ed judgment for just under $5,000 in favor of
Gabourel on his negligence cause of action.
Diesel Fuel appeals on the ground that limi-
tations barred the actions brought against it.
We affirm.

It is generally undisputed that Gabourel
brought the engine to Diesel Fuel for repair
in January of 1988 and that Diesel Fuel
repaired and returned the engine in Febru-
ary of 1988. However, the engine suddenly
stopped on the first night out after being
overhauled. Diesel Fuel worked on the en-
gine the next day and concluded that there
was nothing wrong with it after performing a
test run. Over the next two months, Diesel
Fuel again did minor maintenance on the

engine: on February 15, 1988, it replaced the oil seal and float tank; and on April 11, 1988, it replaced the fuel pump and injectors. Nevertheless, from the time it was returned to Gabourel, the engine failed to perform properly (e.g., froze up, smoked, spit oil, did not have the required power, was missing, used excessive amounts of oil, and generally exhibited substandard performance). Gabourel continued to call Diesel Fuel for repair of the engine problems in question, but Diesel Fuel never discovered or corrected the underlying problem. The problem became so severe that in May 1988, the prior captain of the shrimp boat, George Haylock, quit out of frustration with the substandard performance, and Gabourel became captain of his shrimp boat.

Finally, in May 1989, the engine again completely failed. Another repair company then opened the engine to discover for the first time that the problems had been caused by a piece of wood in the oil strainer.[1] This problem could not have been discovered without taking the engine apart, which had not occurred since February of 1988 when Diesel Fuel had last overhauled the engine.

Gabourel filed suit against Diesel Fuel on January 18, 1991, some three years after the repair of the engine, but less than two years after Gabourel discovered the cause of his problems with the engine as the piece of wood negligently left in the oil strainer by Diesel Fuel. Diesel Fuel accordingly pleaded the two-year statute of limitations. Tex. Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986). Gabourel counters that limitations did not begin to run until he discovered the nature or source of his engine problems in May of 1989. The case was tried to the court, which by granting judgment for Gabourel impliedly found that the statute had been tolled by the discovery rule.

Diesel Fuel brings two points of error complaining that the trial court erred in failing to find that Gabourel's causes of action accrued before May of 1988 and thus that they are barred by the statute of limitations.

However, we initially address Gabourel's argument that Diesel Fuel waived its limitations defense by failing to raise it timely.

Diesel Fuel initially answered by general denial alone and later attempted to add the affirmative defense of statute of limitations in Defendant's First Supplemental Answer filed on November 24, 1992, the second and final day of trial. By its limitations defense Diesel Fuel argues that Gabourel was aware of a problem with his engine, and that limitations accordingly began to run, in the late spring or early summer of 1988.

█ Though Diesel Fuel may have labelled its pleading a "supplemental" answer, its attempt to raise the additional affirmative defense of limitations amounted to an amendment of the original answer subject to the provisions of Texas Rule of Civil Procedure 63 concerning the time limit for filing amended pleadings. *See Food Source, Inc. v. Zurich Ins. Co.,* 751 S.W.2d 596, 599 (Tex. App.—Dallas 1988, writ denied).

Rule 63 provides generally that the parties may file amendments to their pleadings at such time as not to operate as a surprise to the opposite party, but that filing within seven days of the trial date or thereafter requires leave of court, which leave should be granted absent a showing of surprise by the opposite party. *See Lee v. Key West Towers, Inc.,* 783 S.W.2d 586, 588 (Tex.1989); *Goswami v. Metropolitan Sav. and Loan Ass'n,* 751 S.W.2d 487, 490–91 (Tex.1988).

The courts have liberally construed Rule 63 such that, in the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the trial court's action in considering the amended pleading, and leave of court is then presumed. *Lee,* 783 S.W.2d at 588; *Goswami,* 751 S.W.2d at 490–91.

---

1. The actual cause of engine failure is in dispute between the parties. Diesel Fuel contends that the wood in question could not have affected the engine in the ways claimed. However, for purposes of determining the present limitations question, we view the evidence in a light most favorable to Gabourel's contention that the wood was in fact the cause of his problems with the engine.

In the present case, though there was no specific request or grant of leave to file the amended pleading, Diesel Fuel argued its limitations defense during its closing argument without objection from Gabourel or motion to strike, and the trial court orally indicated his findings that limitations began to run in July of 1989. Accordingly, we presume that leave of court was given to amend the pleadings to add the affirmative defense of limitations.

However, with regard to the merits of Diesel Fuel's limitations defense, we agree with Gabourel that limitations was properly tolled by application of the discovery rule.

■ The primary purpose of limitations statutes is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988). For a suit to be timely under the two-year statute, it must be commenced within two years following the date the cause of action accrues. Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986). For the purposes of application of limitations statutes, a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990); *Riojas v. Phillips Properties, Inc.*, 828 S.W.2d 18, 21 (Tex.App.—Corpus Christi 1991, writ denied). In personal injury actions, this means when the wrongful act effects an injury, regardless of when the claimant learned of the injury. *Moreno*, 787 S.W.2d at 351; *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex.1977).

■ However, the "discovery rule" applies as an exception to the general rule in certain situations in which a claimant is unable to discover his injury at the time it occurs. *Robinson*, 550 S.W.2d at 19; *Riojas*, 828 S.W.2d at 21. When applied to a given case, the discovery rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury.

*Moreno*, 787 S.W.2d at 351; *Weaver v. Witt*, 561 S.W.2d 792, 793–94 (Tex.1977). The burden is on the party relying on the discovery rule to plead and prove it at trial. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex.1988); *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 113–14 (Tex.App.—Corpus Christi 1991, writ denied).

The Texas Supreme Court, however, has been cautious to extend the discovery rule only to limited categories of cases and does not recognize the discovery rule as applicable to every injury that might not be fully discovered by the plaintiff at the time it occurs. Accordingly, in all applications of the discovery rule, the injury has been of a type that was inherently undiscoverable. In other words, the plaintiff did not know and could not have known of the injury at the time it occurred. See, e.g., *Willis*, 760 S.W.2d at 645 (Tex.1988) (discovery of legal malpractice); *Hays v. Hall*, 488 S.W.2d 412, 414 (Tex.1972) (discovery that patient is fertile after vasectomy); *Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex.1967) (discovery of sponge left in patient's body after surgery); *see also Allen v. Roddis Lumber and Veneer*, 796 S.W.2d 758, 760–61 (Tex.App.—Corpus Christi 1990, writ denied) (discovery of undetectable formaldehyde vapors).

The *Gaddis* court, for instance, was careful to limit its application of the discovery rule only to those causes of action based upon the alleged negligence of a physician in leaving a foreign object in his patient's body, as a very specific class of cases in which an exception to the general rule was necessary in order to do justice. *Id.* at 580. The *Gaddis* court, moreover, in applying the discovery rule to this limited class of cases, noted that "this is a peculiar type of case which is not particularly susceptible to fraudulent prosecution; furthermore, the disadvantage to the defendant is overbalanced by the shocking results of the contrary rule which would bar a plaintiff from recovery when he could not know of the wrongful act until after the period of time prescribed by the statute of limitations had run." *Id.* The Court thus did not focus on the equities of the particular case under review so much as the equities of the particular

class of cases of which the case under review was an example.

More recently in *Trinity River Authority v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (1994), the Supreme Court reaffirmed the principle that the discovery rule is merely an exception to the general rule concerning the time of accrual with regard to certain classes of cases. In *Trinity River Authority*, the Supreme Court accordingly determined, without deciding whether the discovery rule should be applied to actions based on negligent design or construction of an improvement to real property, that it had not yet been adopted for such cases at the relevant time in question. Therefore, *Trinity River Authority* clearly suggests that the Supreme Court is still cautious in its extension of the discovery rule and hesitant to adopt it absent compelling reasons to show that a whole class of cases is being unjustly served by the general rule of accrual.

Although in the present case there is no argument that the discovery rule should not apply, we find only one similar case in which the discovery rule has been applied to the negligent repair of an engine. *See Bowe v. General Motors Corp.*, 830 S.W.2d 775 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Moreover, we find no Texas Supreme Court authority for such an extension. Nevertheless, we acknowledge that there is good reason to apply the discovery rule to this class of cases, since the complexity of machines in our culture and the inability to discover the cause of mechanical problems rises almost to the level of the inability to discover negligent repair of the human machine that was the subject of *Gaddis*. Our present case is, in fact, very similar to *Gaddis* in that a foreign object was likewise left in the non-human machine at issue here which has supposedly caused the present ills in that machine.

Accordingly, though the Texas Supreme Court has not yet adopted the discovery rule for the present class of cases, we assume that the discovery rule would logically apply to the negligent repair of an engine or mechanical device that does not become apparent for some time after it occurs. In the present case, Diesel Fuel's negligent repair of the shrimp boat engine did not start the running of limitations until such time as Gabourel should have discovered the nature of the problem.

Although it is undisputed that the engine exhibited continuing problems following the initial overhaul by Diesel Fuel, Gabourel was unable to discover the nature of those problems, a piece of wood in the oil strainer, until the subsequent overhaul in May 1989, well within two years of the time suit was filed. Accordingly, the trial court correctly determined that limitations did not bar Gabourel's claims. We overrule Diesel Fuel's points of error.

The judgment of the trial court is AFFIRMED.