**TANGLEWOOD TERRACE, LTD., Appellant,**

v.

**THE CITY OF TEXARKANA, TEXAS, d/b/a Texarkana Water Utilities, Appellee.**

No. 06–98–00059–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 13, 1999.

Decided June 21, 1999.

Brady Paddock, Paddock Law Office, Texarkana, for appellant.

David J. Labrec, Catherine Marie Fancher, Strasburger & Price, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Justice ROSS.

Tanglewood Terrace, Ltd. (TTL), builder and owner of the Tanglewood Terrace apartment complex, sued the City of Texarkana, Texas d/b/a Texarkana Water Utilities (TWU) for $54,211.30 in alleged overcharges for the period covering 1976 to 1993. TTL appeals from a judgment awarding it $1,939.50 and contends the district court erred in: (1) granting TWU's motion for partial summary judgment; (2) prohibiting TTL from admitting evidence of all overcharges from 1976 to 1993; (3) prohibiting TTL from admitting evidence of the amount of interest lost as a result of the overcharges; and (4) granting TWU's motion to disregard jury finding or for judgment notwithstanding the verdict. We sustain TTL's first and second points, reverse the judgment, and remand for a new trial on TTL's money had and received cause of action. In the interest of justice, we will address TTL's third point of error, but find it unnecessary to consider its fourth point.

### Background

In 1972, TTL built the Tanglewood Terrace Apartments, a 196–unit complex in Texarkana. In the same year, TWU installed a water meter at the complex, which was identified as servicing 164 apartments, and in 1973, TWU installed a second meter, identified as servicing 32 apartments. In 1976 and 1980, TWU installed third and fourth water meters, respectively, which were incorrectly classified and billed as commercial meters, not residential meters. This billing error resulted in overcharges. Additionally, after the installation of these third and fourth meters, the 1972 meter continued to be listed as servicing 164 apartments when it actually serviced only 64 apartments. This too resulted in overcharges. The to-tal alleged overcharges from December 1976 through February 1993 equaled $54,-211.30.[1] Neither TTL nor TWU was aware of these overcharges until TWU's finance director, Web Stanley, performed an analysis of TTL's account history in assisting TTL to locate potential water leaks.

On December 16, 1994, TTL filed suit against TWU for breach of contract, seeking damages for the alleged overcharges dating from 1972 and alleging that it did not discover its damages until 1993. In its original answer, TWU pled a four-year statute of limitations as an affirmative defense, and in October 1996, it filed a motion for partial summary judgment based upon, among other things, the defense of limitations. TTL filed a response to the motion for partial summary judgment in which it again asserted that it did not discover the overcharges until 1993. On December 5, 1996, TTL filed its amended response to the motion for partial summary judgment in which it more specifically raised the discovery rule in opposition to the motion. On the same date, TTL also filed its first amended original petition which, in addition to its contract claim, asserted new claims against TWU for negligence and for money had and received. On December 16, 1996, the court heard TWU's motion for partial summary judgment but did not rule on that motion. On March 10, 1997, TWU filed special exceptions to TTL's first amended original petition. Upon consideration of these exceptions, the trial court struck TTL's negligence claim from the lawsuit. On March 17, 1997, TTL filed a second amended original petition alleging only claims for breach of contract and for money had and received. On March 25,-1997, TWU filed what it styled as a third amended original answer[2] in which it pled generally, among other things, the affir-

---

1. We note that in arriving at the amount of total overcharges, certain water undercharges were netted against certain sewer overcharges.

2. The clerk's record does not reflect a second amended original answer.

mative defense of "statute of limitations." On October 27, 1997, a day before trial, the court granted TWU's motion for partial summary judgment. The court's order merely states that the motion is granted "in all respects." Based upon this ruling, the court limited TTL's proof of damages at trial to the four-year period preceding the filing of the lawsuit, i.e., December 16, 1990 to December 16, 1994, and TTL presented evidence of overcharges for this four-year period.[3] The jury found there was no breach of contract by TWU, but it found in favor of TTL on the money had and received claim and awarded damages of $16,996.80, representing proven overcharges. After trial, TWU filed a motion to disregard jury finding or for judgment notwithstanding the verdict in which it argued that a two-year statute of limitations applied to a claim for money had and received. In the court's judgment, it held that a two-year statute of limitations did apply and awarded damages of $1,939.50,[4] representing the period not more than two years prior to the filing of suit as supported by factually sufficient evidence. The court also awarded prejudgment interest at ten percent simple interest from December 16, 1994 to November 10, 1997, court costs of $2,109.25, and postjudgment interest at ten percent compounded annually.

3. Because TWU corrected the billing error upon discovery in February 1993, TTL suffered no damages after February 1993; therefore, at trial, TTL actually proved overcharge damages only for the period from December 16, 1990 through February 1993.

4. In calculating this figure from the jury findings, the court examined the two-year period prior to the filing of suit on December 16, 1994, i.e., December 16, 1992 to December 16, 1994. However, because TWU corrected the billing error after February 1993 and there were no damages thereafter, TTL proved damages only for the period from December 16, 1992 through February 1993. In adding this, the court awarded ¹⁶/₃₁ of the December 1992 damages (16/31 of $738.85 = $381.34), plus damages for all of January 1993 ($795.45) and February 1993 (762.77) which equals $1,939.56.

## TWU's Motion for Partial Summary Judgment

■ First, TTL contends the trial court erred in granting TWU's motion for partial summary judgment. Specifically, it argues that when a party seeks summary judgment based on the statute of limitations, it must prove when the cause of action accrued and negate the applicability of the discovery rule. Further, it argues that the trial court's summary judgment ruling applied to its money had and received claim, not merely to its breach of contract claim. TWU argues, however, that its motion for partial summary judgment dealt only with TTL's breach of contract claim[5] and that TTL's claim for money had and received was not challenged by TWU in its motion. Therefore, it argues that TTL's contention is off point because it deals with the money had and received claim, and not the contract claim, in relation to the summary judgment ruling.

In its motion for partial summary judgment, TWU alludes to TTL's original petition and its assertion of a cause of action for breach of contract. It also refers to its own original answer in which it affirmatively asserted that TTL's claims are barred by limitations. However, under the caption "SUMMARY JUDGMENT GROUNDS," TWU's motion also states,

5. At trial, the jury found there was no underlying breach of contract. Therefore, if the trial court's summary judgment ruling, which held that the discovery rule did not apply on these facts and that a four-year statute of limitations did apply, dealt only with TTL's breach of contract claim, then TTL's claim on appeal is moot. That is, if the trial court had ruled in favor of TTL on TWU's motion for summary judgment, and, therefore, the jury had been allowed to consider damages (overcharges) for purposes of the contract claim for the full period sought by TTL, i.e., 1976 to 1993, it still would have awarded no damages on the breach of contract claim because it found there was no underlying breach of contract. Importantly, TTL does not attack the jury's finding that there was no breach of contract.

"[b]ased upon the foregoing, Defendant is entitled to Partial Summary Judgment for *any* alleged caused [sic] of action barred by the applicable statutes of limitation set forth in Chapter 16, Texas Civil Practices [sic] and Remedies Code." (Emphasis added.) On December 5, 1996, TTL filed its first amended original petition and by this pleading added its negligence and money had and received claims to its suit. On December 16, 1996, TWU filed its brief in support of its motion for partial summary judgment. In this document, TWU specifically references TTL's first amended original petition and directs its arguments against not only TTL's breach of contract claim, but against its tort claims as well.[6] Further, TTL's first amended response to the motion for partial summary judgment discusses, without objection from TWU, all of the claims asserted in its first amended original petition. The court, in its order granting the motion for partial summary judgment, simply stated:

> After reviewing the motion, any responses or replies thereto, the briefs filed in support thereof, and after considering the evidence and the arguments of counsel, this court is of the opinion that the motion is meritorious and should be granted in all respects.

It is apparent from the record as a whole that the parties and the court treated TWU's motion for partial summary judgment as directed against all of TTL's claims, including its claim for money had and received. We reject TWU's argument that it was directed only to the breach of contract claim.

■ Having determined the scope of the trial court's order on TWU's motion, we now decide whether TWU met its burden of proof at the summary judgment hearing. The standard for reviewing a summary judgment under Texas Rule of Civil Procedure 166a(c) is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that the judgment should be granted as a matter of law. *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In conducting this review, an appellate court takes as true all evidence favorable to the nonmovant, and it makes all reasonable inferences in the nonmovant's favor. *Id.* The *KPMG Peat Marwick* case also dealt with application of the discovery rule in the summary judgment context. There, the Texas Supreme Court stated:

> A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, *if it applies* and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations.

*Id.*(emphasis added); *see also Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n. 2 (Tex.1988).

■ As to the defendant's burden under the first prong above, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). Under the second prong, the defendant must initially

---

6. For example, the heading under II., Page 2, of TWU's brief reads as follows:

REGARDLESS OF WHETHER PLAINTIFF'S *CLAIMS* SOUND IN *TORT* OR IN CONTRACT, DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT THE DISCOVERY RULE DOES NOT APPLY TO TOLL THE STATUTE OF LIMITATIONS APPLICABLE TO *THESE CLAIMS* (Emphasis added.)

show either that the discovery rule does not apply, or that it has not been pled or otherwise raised. In general, the discovery rule applies in those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1994). An injury is inherently undiscoverable if it is the type of injury that is not generally discoverable by the exercise of reasonable diligence. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex.1998) (citing *Computer Assocs. Int'l, Inc.*, 918 S.W.2d at 455). Thus, if the discovery rule has been pled or otherwise raised, and the defendant has conclusively shown that the nature of the injury is not inherently undiscoverable, or that the evidence of injury is not objectively verifiable, then the discovery rule does not apply and summary judgment is proper. On the other hand, if the discovery rule has been pled or otherwise raised, and the defendant has *not* conclusively shown that the nature of the injury is not inherently undiscoverable, or that the evidence of injury is not objectively verifiable, then the discovery rule does apply and accrual of the cause of action occurs when the plaintiff knew or should have known of the wrongfully caused injury. *See KPMG Peat Marwick*, 988 S.W.2d at 748. It is then the defendant's burden to prove as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. Once the defendant has met its burden under both prongs, the plaintiff may still defeat summary judgment by adducing proof raising a fact issue in avoidance of the statute of limitations. *Id.*

■ Applying the first prong of the *KPMG Peat Marwick* test to the present case, the parties do not dispute when TTL's cause of action for money had and

received accrued.[7] A cause of action for money had and received accrues when money is paid. *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 163–64 (Tex.App.-El Paso 1997, no writ); *see also Autry v. Dearman*, 933 S.W.2d 182, 190 n. 7 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Here, the accrual of individual causes of action correspond with each monthly overcharge. TTL's own pleadings demonstrate that claims for money had and received accrued on a monthly basis in that TTL seeks an award of prejudgment interest "from the date of each overpayment through the date of judgment." Each cause of action for conversion of money accrued when TTL undisputedly paid each month's bill containing overcharges.

■ Under the second prong of *KPMG Peat Marwick*, again there is no dispute that TTL pled the discovery rule in its original petition and raised it in its responses to TWU's motion for partial summary judgment. We must now decide whether TWU established that the discovery rule does not apply by conclusively showing either that the injury incurred was not inherently undiscoverable or that the evidence of injury was not objectively verifiable. TWU does not dispute that the evidence of injury is objectively verifiable. It does contend, however, that the injury to TTL was not inherently undiscoverable and states:

The summary judgment evidence attached to TTL's First Amended Response to TWU's Motion for Partial Summary Judgment demonstrates that TTL's injury was not inherently undiscoverable. For example, the Affidavit of Douglas W. Hunt [president of the management company which manages Tanglewood Terrace Apartments] reveals that TTL discovered TTU's [sic] alleged errors during a routine check for leaks at the Tanglewood Terrace Apartments:

---

**7.** We do not concern ourselves with TTL's contract claim. The jury found there was no breach of contract, and TTL does not challenge this finding.

"In 1993, my father (William J. Hunt) and I contacted the City of Texarkana (the "City") about locating possible water leaks at Tanglewood Terrace. During the process of checking for leaks, we turned off each of the four meters providing water service to the complex in order to determine which meters serviced which apartments. During this process, my father and I discovered ... that one meter at the complex was originally classified as servicing 164 apartments when, in fact, the meter serviced only 64 apartments. We also discovered ... that two other meters were erroneously classified as commercial rather than residential meters."

Douglas W. Hunt's testimony demonstrates that, although TTL did not discover the discrepancy regarding the number of units and classifications of the meters until 1993, TTL could have discovered the discrepancy at any time after the meters were installed by simply conducting a routine check. Accordingly, TTL **was not unable** to learn of its injury until 1993, and the discovery rule cannot apply as a matter of law.

■ TWU correctly states, "The discovery rule defers accrual of a cause of action until a claimant knows or in the exercise of reasonable diligence should know of the facts giving rise to the cause of action." However, TWU then relies on language found in several courts of appeals decisions for what it contends is a general "unable to discover" requirement of the discovery rule: that the claimant "did not know **and could not have known** of the injury at the time." The Texas Supreme Court explained in *S.V.* why such a requirement is illogical:

To be "inherently undiscoverable", an injury need not be absolutely impossible to discover, else suit would never be filed and the question whether to apply the discovery rule would never arise. Nor does "inherently undiscoverable" mean merely that a particular plaintiff did not discover his injury within the prescribed period of limitations; discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred and plaintiff's diligence as well. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence.

*S.V.*, 933 S.W.2d at 7; *see also Computer Assocs. Int'l, Inc.*, 918 S.W.2d at 456.

The "unable to discover" concept is typically applied in equitable estoppel type situations where fraud or concealment is alleged as a basis for invoking the discovery rule. *See Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 809 (Tex. 1979); *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (1943); *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438, 440 (1940); *Owen v. King*, 130 Tex. 614, 111 S.W.2d 695, 697 (1938). But in *Computer Assocs. Int'l, Inc.*, the Texas Supreme Court recognized that, "[u]nrelated to fraud or concealment," the discovery rule exception has also been permitted in those cases where the nature of the injury incurred is inherently undiscoverable, i.e., where "it is difficult for the injured party to learn of the negligent act or omission." *Computer Assoc. Int'l, Inc.*, 918 S.W.2d at 456 (quoting *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988)).

TWU cites *Koch Oil Co. v. Wilber*, 895 S.W.2d 854 (Tex.App.-Beaumont 1995, writ denied). There, the court described the discovery rule as "a judicially constructed test which operates as an exception to the general rule when the claimant was unable to know of his injury when it accrued." *Id.* at 863. However, the sentence immediately following this statement makes it apparent that this general proposition applies where "the defendant fraudulently conceals the existence of a cause of action from the injured party." *Id.* at 863. We do not construe the "unable to know" language of this case as stating a requirement for application of the discovery rule in all

cases where the facts giving rise to a cause of action are inherently undiscoverable.

TWU cites three other cases in support of its contention that reliance on the discovery rule requires that the claimant could not have known of the injury at the time. It quotes from *Diesel Fuel Injection Serv., Inc. v. Gabourel,* 893 S.W.2d 610, 612 (Tex.App.-Corpus Christi 1994, no writ), for the proposition that the discovery rule "applies as an exception to the general rule in certain situations in which a claimant is unable to discover his injury at the time it occurs." This case affirmed the application of the discovery rule to a claim of negligent repair of a diesel engine. TWU's quote from this case is better understood when the underlying facts, as reported in the opinion, are considered:

> Gabourel brought the engine to Diesel Fuel for repair in January of 1988 and ... Diesel Fuel repaired and returned the engine in February of 1988. However, the engine suddenly stopped on the first night out after being overhauled. Diesel Fuel worked on the engine the next day and concluded that there was nothing wrong with it after performing a test run. Over the next two months, Diesel Fuel again did minor maintenance on the engine: on February 15, 1988, it replaced the oil seal and float tank; and on April 11, 1988, it replaced the fuel pump and injectors. Nevertheless, from the time it was returned to Gabourel, the engine failed to perform properly (e.g., froze up, smoked, spit oil, did not have the required power, was missing, used excessive amounts of oil, and generally exhibited substandard performance). Gabourel continued to call Diesel Fuel for repair of the engine problems in question, but Diesel Fuel never discovered or corrected the underlying problem. The problem became so severe that in May 1988, the prior captain of the shrimp boat, George Haylock, quit out of frustration with the substandard performance, and Gabourel became captain of his shrimp boat.

> Finally, in May 1989, the engine again completely failed. Another repair company then opened the engine to discover for the first time that the problems had been caused by a piece of wood in the oil strainer. This problem could not have been discovered without taking the engine apart, which had not occurred since February of 1988 when Diesel Fuel had last overhauled the engine.

*Id.* at 610–11.

It is apparent from the Corpus Christi court's application of the discovery rule to these facts that it did not construe the rule to require that the injury be impossible to discover.

TWU cites *Johnson v. Abbey,* 737 S.W.2d 68, 69 (Tex.App.-Houston [14th Dist.1987, no writ), for the proposition that the discovery rule is invoked only when a legal remedy otherwise would be "unavailable to the injured party before he can know that he is injured." This quote by the Houston court is from *Hays v. Hall,* 488 S.W.2d 412, 414 (Tex.1972), where the supreme court reversed the dismissal of a malpractice case based on limitations and held the discovery rule applied where a patient is fertile after a vasectomy. *Hays* is in contrast to the case that was under consideration by the Houston court where the Houston court held that the discovery rule does not apply in a suit by a physician against a nurse anesthetist for falsification of anesthesia reports where the physician complainant had opportunity in an earlier malpractice case against him to test the accuracy of those reports. The Houston court held that the discovery rule did not apply because, unlike the situation in *Hays,* the physician's discovery of his alleged injury was not *before he could know* that he was injured. The earlier medical malpractice action provided him the opportunity to learn of his injury.

The case of *Stewart v. Stanley Bryan Oldsmobile–Buick–Pontiac–GMC, Inc.,* 883 S.W.2d 273 (Tex.App.-Corpus Christi 1994, writ denied), was an appeal from a summary judgment granted in an action

arising from an automobile collision. Appellant alleged that she could not have discovered her injury until after the statute of limitations had run. In holding that the discovery rule did not apply, the Corpus Christi court wrote:

Appellant knew she had been injured in the collision immediately, although she did not determine the full extent of her injuries until much later. The injury causing event was not hidden from her.... Appellant is required to ... determine the extent of her injuries before the limitations period expires.

*Id.* at 274–75.

It is important to note that Stewart was involved in an automobile collision to put her on notice to investigate and determine the extent of her injuries. In the instant case, however, the only summary judgment evidence to which TWU directs this Court is TTL's own affidavit from Douglas W. Hunt described above. That affidavit however, merely describes *when* TTL actually discovered the nature of its injury and the circumstances surrounding that discovery. It says nothing about when TTL should have been put on notice to determine the extent of its injuries before the limitations period expired. Although TWU's statement that this affidavit demonstrates that "TTL could have discovered the discrepancy at any time after the meters were installed by simply conducting a routine check" may be a correct one, such statement does not satisfy TWU's burden pursuant to its motion for partial summary judgment.

■ The task in deciding if the plaintiff's injury is inherently undiscoverable is not in deciding whether the plaintiff *could* have discovered the injury, but in deciding whether he actually did discover it or, in the exercise of reasonable diligence, *should* have discovered it. Here, TWU directs this Court only to summary judgment evidence showing that TTL did actually discover its injury in 1993. TWU wholly failed in its burden to show when TTL *should* have discovered its injury.

*City of Austin v. North Austin State Bank,* 631 S.W.2d 564 (Tex.App.-Austin 1982, no writ), was decided on facts very similar to the present case. Although not directly concerned with the discovery rule as such, this case dealt with constructive knowledge of a bank that had been overcharged for electricity. The bank sued the city to recover excess sums it paid to the city for electricity provided from 1972 to 1979. The overcharges resulted from the city's error in computing the bank's monthly utility statements. Pursuant to a city ordinance, the city charged the rate applicable to customers using both electricity and gas for energy. The bank, however, used only electricity and, therefore, was entitled to a lower rate. The trial court found for the bank, and the city appealed. *Id.* at 565–66. On appeal, the city argued that the trial court erred because the bank had constructive notice of the city's mistake more than two years before suit was filed and, therefore, the bank's action for money had and received was barred by the two-year statute of limitations. Specifically, the city argued that the bank *could have discovered* the mistake by comparing the applicable city utility ordinance, of which the bank had constructive notice, to the erroneous billing code shown on the bank's monthly statements. Therefore, the city argued, the bank was put on inquiry and if the matter had been pursued with diligence, the bank would have discovered the city's mistake in assigning an erroneous classification and rate. The Austin Court of Appeals rejected the city's argument and affirmed the judgment of the trial court, thus finding for the bank. In doing so, the court relied on language of the Texas Supreme Court in *El Paso Elec. Co. v. Raynolds Holding Co.,* 128 Tex. 495, 100 S.W.2d 97, 101–02 (1937), as follows:

Plaintiffs had a right to rely on the presumption that defendant would obey the law and would give them the benefit of the rate they were entitled to receive under the published schedule....

Whatever may be the rule with reference to the use of diligence to discover fraud, we hold in this instance that owing to the relation of the parties ... plaintiffs were under no duty to exercise diligence to discover the over-charges (even if they could have reasonably done so) until they came into possession of facts sufficient to cause them to distrust defendant, and also to put an ordinarily prudent person on inquiry.

*City of Austin*, 631 S.W.2d at 566–67.[8]

TWU contends that *City of Austin* is distinguishable because in that case the overcharges resulted from the city's admitted error in computing the bank's monthly utility statements, whereas in the present case, we do not know how the billing error occurred. However, TWU's position at trial was that fault in the admitted overcharges did not matter. In attempting to settle a question as to the admission of evidence outside the presence of the jury, TWU's counsel stated:

I'm saying that [TTL's counsel] can prove his breach of contract cause of action and his money had and received cause of action. Fault, at least on the City's part, is not the issue. Either we breached the contract or we didn't, yes or no.... Whether the City—His causes of action are the same, whether the City made a mistake or whether [TTL] made a mistake. Nobody really knows the answer to that question and, frankly, it doesn't matter.

The presumption stated by the supreme court in the *El Paso Elec. Co.* case (and quoted in the *City of Austin* case) that the defendant will follow the law was also relied upon in *Precision Sheet Metal Mfg.*

*Co. v. Yates*, 794 S.W.2d 545, 550 (Tex. App.-Dallas 1990, writ denied). In that case, vendees of land sued the vendors to recover damages or equitable rescission for the vendors' failure to replat a subdivision in accordance with a platting statute. Because the vendors failed to replat after dividing their property into two parts and before their sale of a part of this property to the vendees, the vendees were unable to obtain a building permit to expand their business. The vendors moved for summary judgment on the basis of limitations, and the vendees asserted that the discovery rule applied. The trial court granted summary judgment for the vendors. On appeal, the vendors argued that the vendees were required to exercise reasonable diligence in considering the quality of the property conveyed prior to consummating the transaction and that the vendees had constructive or actual notice of all laws in effect at the time of the sale, including the platting statute. The vendees, however, argued that vendees of land lying within a city's limits may rely upon a presumption that the vendor has complied with the law in subdividing its property. Accordingly, they argued, their cause of action should not accrue until put on notice that their use is restricted by an appropriate governmental authority. In deciding whether the vendors' failure to replat was reasonably susceptible to discovery within the prescribed limitations period, the Dallas Court of Appeals cited the *City of Austin* case and held that the vendees had a right to rely on the presumption that the vendors would obey the mandatory language of the platting statute and file a plat of the resubdivision. Therefore, the court held, con-

---

**8.** In the *City of Austin* case, the court of appeals placed the burden upon the city (defendant) to negate the bank's (plaintiff's) assertion of the discovery rule by proving that the bank actually possessed facts sufficient to cause it to believe an incorrect rate had been charged, and also to put an ordinarily prudent person on inquiry. *City of Austin v. North Austin State Bank*, 631 S.W.2d 564, 567 (Tex.App.-Austin 1982, no writ). We note that this did not take place in the summary

judgment context in which the defendant, in addition to having the burden to conclusively establish his affirmative defense of limitations, also has the burden to negate the discovery rule which the plaintiff has pled as an exception to limitations. *See KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n. 2 (Tex.1988).

structive knowledge of the platting statute was no defense and the discovery rule applied.

This same presumption is applicable in the present case. TTL had a right to rely on the presumption that TWU would obey the law and would give them the benefit of the rate they were entitled to receive. *City of Austin,* 631 S.W.2d at 566–67. TWU did not show that TTL possessed facts sufficient to cause it to believe an incorrect rate had been charged, or to put an ordinary and prudent person on inquiry. We hold that the discovery rule applies to toll the running of the statute of limitations until the time that TTL actually discovered its injury in February 1993.

■■■■ An action for money had and received, being in the nature of an action for conversion, is subject to a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986 & Supp.1999); *Pelto Oil Co. v. CSX Oil & Gas Corp.,* 804 S.W.2d 583, 586 (Tex.App.-Houston [1st Dist.] 1991, writ denied); *see also Autry,* 933 S.W.2d at 190 n. 7; *Cherokee Water Co. v. Advance Oil & Gas Co.,* 843 S.W.2d 132, 135 (Tex.App.-Texarkana 1992, writ denied). We note that TTL agrees that its claim for money had and received is governed by a two-year statute of limitations. Here, TTL filed its original petition for breach of contract on December 16, 1994. On December 5, 1996, it filed a first amended original petition which, based on the same alleged overbilling by TWU, added new claims for negligence and for money had and received. On March 17, 1997, TTL filed a second amended original petition alleging only claims for breach of contract and for money had and received. Although TTL's claim for money had and received was not filed within two years of February 1993, the parties do not dispute that TTL's initial claim for breach of contract was filed within the applicable four-year limitations period. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986). TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1997) provides that if a filed pleading relates to a cause of action that is not subject to a plea of limitation when it is filed, a subsequent amendment that changes the facts or grounds of liability is not subject to a plea of limitation unless the amendment is wholly based on a new, distinct, or different transaction or occurrence. *See Shivers v. Texaco Exploration and Prod., Inc.,* 965 S.W.2d 727, 736 (Tex.App.-Texarkana 1998, writ denied); *Hill v. Heritage Resources, Inc.,* 964 S.W.2d 89, 118 (Tex. App.-El Paso 1997, writ denied); *Lone Star Partners v. NationsBank Corp.,* 893 S.W.2d 593, 601 (Tex.App.-Texarkana 1994, writ denied). The purpose of Section 16.068 was to liberalize the plaintiff's right to amend a petition filed before a cause of action was barred by limitations and include any other causes of action that could be based on the same transaction or occurrence. *Oliveros v. Dillon–Beck Mfg. Co.,* 260 S.W.2d 707, 710 (Tex.Civ.App.-Galveston 1953, no writ). The test to determine whether an amended petition relates back to the original petition has two prongs. First, the cause of action asserted in the first pleading must not have been time barred when filed, because if limitations barred the original cause of action, it will bar a new cause of action asserted in the amended petition even if it is from the same transaction or occurrence. Second, the amendment must not be based on a wholly new or different transaction or occurrence. *Tippit v. Tippit,* 865 S.W.2d 624, 627 (Tex.App.-Waco 1993, no writ); *Cooke v. Maxam Tool and Supply, Inc.,* 854 S.W.2d 136, 141 (Tex.App.-Houston [14th Dist.] 1993, writ denied); *see Almazan v. United Servs. Auto. Ass'n, Inc.,* 840 S.W.2d 776, 778 (Tex.App.-San Antonio 1992, writ denied).

Here, because the applicable limitations period did not bar TTL's contract claim in its original petition, and because TTL's claim for money had and received in its second amended original petition was based on the same transaction or occurrence as its initial contract claim, TTL's

second amended original petition relates back to the original petition and TTL's claim for money had and received is not barred by limitations.

■ Having determined that the discovery rule applies in this case and that TTL's claim for money had and received is not barred by limitations, we now address the remaining issue under the second prong of the test set out in *KPMG Peat Marwick*, i.e., whether TWU negated the discovery rule by proving as a matter of law that there was no genuine issue of material fact about when TTL in the exercise of reasonable diligence should have discovered the nature of its injury. In making this review we take as true all evidence favorable to the nonmovant and make all reasonable inferences in the nonmovant's favor. TWU's summary judgment proof is found in a supplement to its motion for partial summary judgment and contains affidavits and deposition testimony. Nothing in TWU's own proof, or in TTL's proof which TWU references, addresses this issue of when TTL *should* have discovered the nature of its injury. As noted earlier, TWU directs us only to TTL's summary judgment evidence of its actual discovery of the nature of its injury in February 1993. Upon review of this evidence, we find it insufficient to prove as a matter of law that there was no genuine issue of material fact about when TTL in the exercise of reasonable diligence *should* have discovered the nature of its injury. Therefore, TWU did not meet its burden of negating the discovery rule. · To the contrary, we find that TTL's summary judgment evidence raises a fact issue in avoidance of the statute of limitations. The fact finder should be given the opportunity to determine the facts with reference to when TTL, in the exercise of reasonable diligence, should have discovered the nature of its injury.

[21] Citing *Woods*, TWU argues that TTL waived its discovery argument with regard to its money had and received claim. The *Woods* case states: "[t]he par-

ty seeking to benefit from the discovery rule must also bear the burden of proving and securing favorable findings thereon." *Woods*, 769 S.W.2d at 518. Although TTL pled the discovery rule and made an offer of proof regarding the damages it believed it was entitled to prove in light of its assertion of the discovery rule, TTL did not request or secure jury findings on the discovery rule. However, the court in *Woods* went on to say:

> This burden does not apply, of course, in summary judgment cases. In *Weaver v. Witt*, we said that on motion for summary judgment, the burden is on the defendant to negate the discovery rule by proving as a matter of law that no issue of material fact exists concerning when the plaintiff discovered or should have discovered.... Thus, in a summary judgment setting, the burden rests upon the movant defendant not only to plead limitations, but also to negate the discovery rule. However, *where the case proceeds to trial with a fact question as to when the plaintiff discovered,* it is the plaintiff who benefits by the discovery rule who must ensure that such an issue is submitted.

*Woods*, 769 S.W.2d at 518 n. 2 (emphasis added). Here, the case never proceeded to trial with a question of fact as to when the plaintiff discovered, because the trial court ruled at the summary judgment stage that the discovery rule did not apply as a matter of law. Therefore, we find that TTL did not waive its assertion of the discovery rule by not requesting or securing a jury finding thereon. It would make no sense to ask the jury to decide something which the trial court has already decided as a matter of law does not apply.

The granting of TWU's motion for partial summary judgment was error. TTL's first point is sustained.

### Excluding Evidence of Overcharges from 1976 to 1993

■ In its second point, TTL contends the trial court erred in prohibiting it from

admitting evidence of all overcharges from 1976 through 1993. TTL argues that it attempted to enter the full amount of overcharges at trial, the trial court excluded this evidence, and it made a bill of exception to preserve this issue for appeal.

■ To obtain reversal of a judgment based on error in the admission or exclusion of evidence, the appellant must show that the trial court did in fact commit error and that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998); *Parkway Hosp., Inc. v. Lee*, 946 S.W.2d 580, 583 (Tex.App.-Houston [14th Dist.] 1997, writ denied). Because we hold that the discovery rule does apply on the facts of this case, thus tolling the statute of limitations, and because TTL did timely file its claim for money had and received as previously discussed, TTL was entitled to introduce evidence of damages for the entire period from December 1976 to February 1993. Thus, it was error to exclude this evidence and its exclusion was reasonably calculated to cause and probably did cause rendition of an improper judgment. TTL's second point of error is sustained.

### Excluding Evidence of the Amount of Interest Lost

In its third point, TTL contends the trial court erred in prohibiting TTL from admitting evidence of the amount of interest it could have earned on the money paid to TWU in overcharges. Based on our disposition of TTL's first two points, this case must be reversed and remanded for retrial

on TTL's money had and received cause of action and we need not reach TTL's remaining points of error. However, in the interest of justice and for consideration on retrial, we will address TTL's third point.

■ Specifically, TTL argues under this point that interest is recoverable for the loss of use of its money as a matter of law from the date of accrual of the action, and it seeks damages from the time of each monthly overcharge until the filing of the lawsuit. For the period prior to filing suit for which the court did allow proof of overcharges, the court correctly awarded ten percent interest as damages for the loss of use of money. Statutory prejudgment interest is mandated at TEX. FIN. CODE ANN. § 304.101–104 (Vernon 1998) for wrongful death, personal injury, and property damage cases. The Texas Supreme Court recently addressed the situation of cases to which statutory prejudgment interest does not apply in *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528–33 (Tex.1998).[9] The court held that in these cases, common-law prejudgment interest shall be calculated in the same manner as statutory prejudgment interest. *Johnson*, 962 S.W.2d at 531–33. Accordingly, common-law prejudgment interest accrues on the earlier of (1) 180 days after the date a defendant receives written notice of a claim, or (2) the date suit is filed. *Id.* at 531. Further, it accrues at the rate of postjudgment interest and is computed as simple interest. *Id.* at 532. Postjudgment interest is governed by TEX. FIN.CODE ANN. § 304.003 (Vernon 1998).[10] The *Johnsonc-*

9. For a full discussion of this subject, *see* Robert H. Pemberton, *A Guide to Recent Changes and New Challenges in Texas Prejudgment Interest Law*, 30 TEX TECH. L.REV. 71 (1999).

10. TEX. FIN.CODE ANN. § 304.003 (Vernon 1998) reads as follows:

   (a) A judgment of a court of this state to which Section 304.002 [Judgment Interest Rate: Interest Rate in Contract] does not apply, including court costs awarded

in the judgment, earns interest at the rate determined under this section.

   (b) On the 15th of each month, the consumer credit commissioner shall determine the interest rate to be applied to a judgment rendered during the succeeding calendar month.

   (c) The judgment interest rate is:

     (1) the auction rate quoted on a discount basis for 52–week treasury bills issued by the United States government as most re-

 

ourt decreed that its common-law prejudgment interest holding "applies to all cases in which judgment is rendered on or after December 11, 1997...." *Id.* at 533. Because the judgment here was rendered on February 18, 1998, the holding of the *Johnson* case applies. The judgment reflects that the trial court awarded "prejudgment interest calculated at ten percent (10%) simple interest from December 16, 1994 to November 10, 1997, ... and postjudgment interest at the rate of ten percent (10%) compounded annually." Therefore, the trial court calculated prejudgment interest in the manner mandated by the *Johnson* case. Because the correct measure of damages for TTL's loss of use of money was common-law prejudgment interest as calculated according to the holding in the *Johnson* case, no question of fact existed for jury determination and the trial court did not err in excluding TTL's evidence of interest for loss of use of money due to the overcharges by TWU. TTL's third point of error is overruled.

The judgment is reversed, and the case is remanded for a new trial on TTL's claim for money had and received.

cently published by the Federal Reserve Board before the date of the computation;
 (2) 10 percent if the auction rate described by Subdivision (1) is less than 10 percent; or

 (3) 20 percent if the auction rate described by Subdivision (1) is more than 20 percent.