In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00020-CV
______________________________


JOHNNY YOUNGBLOOD AND CAROL YOUNGBLOOD, Appellants
 
V.
 
U.S. SILICA COMPANY, THE FELDSPAR CORPORATION,
AND UNIMIN CORPORATION, Appellees


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 98-1743-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Near the end of his forty years of employment with Kilgore Ceramics,


 Johnny
Youngblood developed respiratory problems. He eventually retired and learned his
breathing difficulties were caused by the work-related illness, "silicosis."


 Youngblood sued
his former employer and a number of silicon manufacturers for his injuries. Three of those
defendants, U.S. Silica Company, The Feldspar Corporation, and Unimin Corporation
(collectively "U.S. Silica"), successfully moved for summary judgment in the trial court, from
which Youngblood now appeals.


 We reverse the judgment.
Standard of Review
          To prevail on a motion for summary judgment, the moving party must establish that
no genuine issue of material fact exists and that it is entitled to judgment as a matter of
law. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). When reviewing the
trial court's grant of a no-evidence summary judgment, the appellate court must examine
the evidence in the light most favorable to the nonmovant, disregarding all contrary
evidence and inferences. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997). A trial court errs by granting a no-evidence summary judgment if there exists more
than a scintilla of probative evidence raising a material fact. Tex. R. Civ. P. 166a(i). More
than a scintilla of evidence exists when the evidence rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. Havner, 953 S.W.2d at
711.
           U.S. Silica moved for summary judgment based on Youngblood's alleged failure
to file suit within the applicable statute of limitations. "A defendant who moves for
summary judgment based upon limitations bears the burden of negating the discovery rule
at the summary judgment stage." Nugent v. Pilgrim's Pride Corp., 30 S.W.3d 562, 567
(Tex. App.—Texarkana 2000, pet. denied). The discovery rule is an exception to the
statute of limitations. As this Court recently stated, the discovery rule
defers the accrual of a cause of action until the plaintiff knew, or through the
exercise of reasonable diligence should have known, of the facts giving rise
to the cause of action. Trinity River Auth. v. URS Consultants, Inc., 889
S.W.2d 259, 262 (Tex. 1994); Moreno, 787 S.W.2d at 351. The discovery
rule therefore delays the commencement of the limitations period when the
nature of the injury is inherently undiscoverable and evidence of the injury is
objectively verifiable. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 918
S.W.2d 453, 456 (Tex. 1996); Tanglewood Terrace, Ltd. v. City of
Texarkana, 996 S.W.2d 330, 337 (Tex. App.—Texarkana 1999, no pet.). 
These two elements of inherent undiscoverability and objective verifiability
balance these conflicting policies in statutes of limitations: the benefits of
precluding stale claims versus the risks of precluding meritorious claims that
happen to fall outside an arbitrarily set period. S.V. v. R.V., 933 S.W.2d 1,
6 (Tex. 1996). An injury is inherently undiscoverable if it is the type of injury
that is not generally discoverable by the exercise of reasonable diligence. 
See HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998), citing
Altai, 918 S.W.2d at 455. In order for an injury to be inherently
undiscoverable, the injury need not be absolutely impossible to discover. 
S.V., 933 S.W.2d at 7. The discovery of a particular injury depends on the
circumstances of the injury and the plaintiff's diligence.
 
Haas v. George, 71 S.W.3d 904, 912 (Tex. App.—Texarkana 2002, no pet.). Regarding
the discovery rule and the tolling of the statute of limitations in occupational disease cases,
the Texas Supreme Court has also stated, 
a cause of action accrues whenever a plaintiff's symptoms manifest
themselves to a degree or for a duration that would put a reasonable person
on notice that he or she suffers from some injury and he or she knows, or in
the exercise of reasonable diligence should have known, that the injury is
likely work-related.
 
Childs v. Haussecker, 974 S.W.2d 31, 33 (Tex. 1998) (emphasis added).

Background Facts
          The evidence, viewed in the light most favorable to Youngblood, showed the
following: Youngblood worked at Kilgore Ceramics from 1959 until his retirement in 1999. 
There was testimony from several sources that Youngblood worked around silicon dust
and that (for at least some portion of his employment) he worked in an area in which he
was also exposed to asbestos. Youngblood testified he retired because he was no longer
able to work due to breathing problems and a continuous cough that was eventually
accompanied by excessive phlegm production. According to Youngblood, it was not until
December 1997 that he learned he had silicosis. 
          During his deposition, Youngblood acknowledged that Kilgore Ceramics required
employees to have their chests x-rayed on being hired, and thereafter all employees were
x-rayed every two or three years. The record before us shows Youngblood was x-rayed
on a periodic basis consistent with this policy. Youngblood also admitted he began
experiencing respiratory problems in the late 1980s, though he did not assume his
condition was work related. 
          In a letter dated March 17, 1992, Allan Goldstein, M.D., the medical director of the
organization that performed a chest x-ray test for Youngblood at his place of employment,
informed Youngblood his x-ray results were such "that we recommend you consult your
physician for further evaluations." The letter, however, did not suggest a medical
diagnosis. As a result of Goldstein's letter, Youngblood went to see Gail Stockman, M.D.,
in Longview. At the time of his deposition in this case, Youngblood could not recall what
Stockman told him regarding his tests at her office. Youngblood, however, denied being
told by Stockman in 1992 that he had silicosis. 
          In 1997, doctors again thought Youngblood's employer-sponsored x-ray appeared
abnormal. The company physician suggested Youngblood see his personal physician for
further evaluation. That letter, like the one Youngblood received in 1992, did not suggest
he had silicosis. According to Youngblood, he was not told he had silicosis and asbestosis
until he later saw Peter Petroff, M.D., of Independent Medical Associates, a company hired
at that time by his employer to review its workers' x-ray results. 
          On August 28, 1998, Youngblood sued a number of defendants, including U.S.
Silica, claiming each was liable for contributing to his contracting the disease conglomerate
silicosis, a disease he claims resulted from his use of the defendants' products during his
employment at Kilgore Ceramics. The trial court ultimately granted summary judgment in
favor of U.S. Silica. On appeal, Youngblood contends genuine issues of material fact exist
as to whether he knew, or should have known, more than two years before the date he
filed the lawsuit that his injuries were work related. 
U.S. Silica's Contentions
          "Except as provided by Sections 16.010 and 16.0045, a person must bring suit for
. . . personal injury . . . not later than two years after the day the cause of action accrues." 
Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002). U.S. Silica alleged
Youngblood either received his silicosis diagnosis in 1985 or 1992 or, alternatively, he
should have known before 1996 that his respiratory problems were work related and that,
by waiting until 1998 to file suit, Youngblood's cause of action was barred by the two-year
statute of limitations. 
          In defense of the trial court's award of summary judgment, U.S. Silica contends a
reasonable person with Youngblood's specific health problems (continuous coughing and
shortness of breath), and in his line of work (being continuously exposed to silicon dust),
would have been on notice that he or she suffers from some injury and, using due
diligence, would have either known, or should have reasonably concluded, that those
symptoms were caused by work-related exposure to silicon dust. Then, citing Zacharie v.
U.S. Natural Res., Inc., 94 S.W.3d 748, 753 (Tex. App.—San Antonio 2002, no pet.), U.S.
Silica contends a singular, definitive, medical diagnosis is not required for the worker to be
placed on notice of a work-related injury; "[a] differential diagnosis is sufficient." U.S. Silica
then argues (1) Youngblood does not dispute he knew he had a lung disease before
August 28, 1996; and (2) Youngblood should have concluded his lung disease was work
related before August 28, 1996, because (a) Youngblood's employer had a policy of having
employees receive chest x-rays on a regular basis, the clear purpose of which was to
screen workers for occupational lung diseases, (b) Stockman's unobjected-to affidavit
establishes she made a differential diagnosis of either silicosis or tuberculosis in 1992,
(c) Randy Erwin, M.D., recommended entering a differential diagnosis of old tuberculosis
or other granulomatous disease, including fungal disease, sarcoidosis, or silicosis on
May 16, 1995, (d) Dale Fisher, M.D., had recommended entry of a differential diagnosis
of silicosis, old tuberculosis, fungal disease, or sarcoidosis in 1998, and (e) Youngblood
reportedly admitted to Andy Abril, M.D., in February 2001 that he had been diagnosed with
silicosis about six or seven years earlier. 
Youngblood's Contentions
          Youngblood counters by referencing his summary judgment affidavit in which he
stated (1) he neither knew, nor could have known, he had silicosis before December 1997
when he was notified by Petroff he had silicosis, and (2) he was never informed of Erwin's
1995 recommendation of a differential diagnosis that included silicosis, nor did he ever say
to Abril that he had silicosis. Then, comparing his appeal with the case reviewed by the
Texas Supreme Court in Childs, 974 S.W.2d 31, Youngblood contends the doctors'
continual failure to diagnose his illness, when combined with Youngblood's own testimony
denying knowledge of the work-related injuries before 1997, presents more than a scintilla
of evidence of a material fact, thereby precluding summary judgment. The relevant
material fact at issue on appeal is whether Youngblood actually knew, or should have
known, before 1996 his injuries were a result of his work-related exposure to silicon dust.
Analysis
          "Typically, inquiries involving the discovery rule raise questions to be decided by the
trier of fact, although the trial court may determine the commencement of limitations as a
matter of law if reasonable minds could not differ about the conclusion to be drawn from
the facts set forth in the record." Nugent, 30 S.W.3d at 567. In this case, the medical
reports included differential diagnoses of silicosis and tuberculosis (or various other
diseases) as early as 1992. The 1992–1996 medical records, however, do not affirmatively
indicate Youngblood was ever made aware of these differential diagnoses. For example,
Youngblood reported shortness of breath beginning in the late 1980s and early 1990s, with
subsequent onset of prolonged coughing in the 1990s. One doctor told Youngblood his
condition was probably the result of smoking cigarettes. Youngblood received news of
abnormal x-rays in 1992 from Goldstein (a company physician) and from Stockman
(Youngblood's personal physician). According to Youngblood, however, Stockman found
no evidence of silicotic material, silicosis, or tuberculosis. It was not until he met with
Petroff December 5, 1997, that anyone told Youngblood he had silicosis. 
          From 1992 until 1997, the doctors hired by Kilgore Ceramics made repeated
suggestions, in writing, that Youngblood visit his personal physician regarding the abnormal
x-rays. The medical records admitted into evidence show Youngblood usually visited a
doctor within two or three months of receiving those letters. We believe Youngblood's
pattern of visiting his personal physician soon after receiving letters from company
physicians shows Youngblood was exercising due diligence in trying to find the cause of
his abnormal x-rays. Yet despite these timely doctor visits, Youngblood consistently stated
no one could explain the cause of the breathing difficulties. According to Youngblood, no
doctor formally diagnosed him with silicosis until December 1997. There was no evidence
that a 1995 unsigned recommendation from Erwin to Surya Lanka, M.D., was either
conveyed to Youngblood or acted on by Lanka. Thus, assuming Youngblood's testimony
is believable (as we must in reviewing a grant of summary judgment, in which all evidence
is viewed in the light most favorable to the nonmovant), this is not a case where the plaintiff
failed to exercise due diligence or otherwise had sufficient information that he should have
concluded his shortness of breath was related to inhalation of silicon dust.



          The chief contradictory evidence comes from Stockman's 2002 affidavit (made ten
years after she met with Youngblood) and anecdotal evidence suggesting Youngblood
could have concluded his respiratory difficulties were related to breathing silicon dust for
more than forty years during his employment at Kilgore Ceramics (especially when the
plant ordered periodic chest x-rays and made employees wear protective masks). But
viewing the evidence in the light most favorable to Youngblood, there is more than a
scintilla of evidence suggesting Youngblood neither discovered his disease, nor could have
assumed his illness was work related, until so informed December 5, 1997. We therefore
find the trial court erred by granting a no-evidence summary judgment in this case.
          This holding is consistent with the Texas Supreme Court's expressed policy of not
requiring plaintiffs to file suit "based only upon their suspicions about causal connections." 
Childs, 974 S.W.2d at 43. And our decision is consistent with the Texas Supreme Court's
proclamation that the commencement of the statute of limitations cannot be determined
as a matter of law if reasonable minds could differ about the conclusion to be drawn from
the facts in the record. Id. at 44–46. 
          Finally, U.S. Silica dedicated a significant portion of its brief to challenging the
affidavits Youngblood submitted as evidence in response to U.S. Silica's motion for
summary judgment. The trial court initially, and partially, granted U.S. Silica's objections
to these affidavits. The trial court, however, later vacated this order. U.S. Silica did not
appeal the trial court's decision to vacate its earlier order and has, therefore, failed to
properly present this issue for appellate review. See Tex. R. App. P. 25.1 (perfection of
appeal in civil cases complete when written notice of appeal is filed with trial court).
Conclusion
          For the reasons stated, we find, when viewing the evidence in the light most
favorable to Youngblood, there is more than a scintilla of evidence Youngblood used due
diligence in determining the cause of his respiratory difficulties, but despite such efforts
neither knew nor could have known his illness was work related until December 5, 1997. 
          We reverse the trial court's judgment and remand the case for further proceedings.
 
                                                                           Donald R. Ross
                                                                           Justice


Date Submitted:      November 12, 2003
Date Decided:         December 18, 2003